IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

VEHICLE IP, LLC,

   Plaintiff,

v.

AT&T MOBILITY LLC, CELLCO
PARTNERSHIP, NETWORKS IN MOTION, INC.,
TELECOMMUNICATION SYSTEMS, INC.,
TELENAV, INC., UNITED PARCEL SERVICE,
INC. and UPS LOGISTICS TECHNOLOGIES,
INC.,

   Defendants.

Civ. No. 09-1007-LPS

PUBLIC VERSION
RELEASED APRIL 19, 2013

## MEMORANDUM ORDER

At Wilmington this 10th day of April, 2013:

Pending before the Court are two motions for summary judgment of noninfringement of U.S. Patent No. 5,987,377 ("the '377 patent"): (i) the motion ("TCS/Cellco Motion") (D.I. 177) filed by defendants TeleCommunication Systems, Inc., Networks In Motion, Inc., and Cellco Partnership (collectively, "TCS/Cellco"); and (ii) the motion ("Telenav/AT&T Motion") (D.I. 182) filed by defendants TeleNav, Inc. and AT&T Mobility LLC (collectively, "TeleNav/AT&T"). Having reviewed the papers filed in connection with the motions, having heard oral argument on May 18, 2012 (*see* Transcript of May 18, 2012 Hearing) (D.I. 225) (hereinafter "Tr."), and, in light of the record and the Court's claim construction, the Court has determined that there are no genuine issues of material fact and, thus, will GRANT the pending

motions.[1]

## I. BACKGROUND

Plaintiff Vehicle IP, LLC ("VIP") filed this patent infringement action against, *inter alia*, defendants TeleNav/AT&T and TCS/Cellco on December 31, 2009, alleging infringement of the '377 patent. (D.I. 1) The Court held a *Markman* hearing on October 28, 2011. *See* October 28, 2011 Claim Construction Hr'g Tr. (D.I. 163) (hereinafter "CC Hr'g Tr."). The Court issued its claim construction Opinion and Order on December 12, 2011. (D.I. 167; D.I. 168)

The Court previously provided the following background with respect to the '377 patent and relevant terms in its claim construction Opinion:

> The patent-in-suit is entitled, "Method and Apparatus for Determining an Expected Time of Arrival," and issued on November 16, 1999. The '377 patent is a continuation of an application that was filed in 1995, which ultimately issued as U.S. Patent No. 5,724,243 ("the '243 patent"), which is not asserted in this case. Both patents are directed at improving vehicle navigation systems through more efficient distribution of navigation functions between a mobile unit located in the vehicle and a remote dispatch, yielding a more accurate determination of expected time of arrival. The '377 patent claims a system in which a remotely located dispatch generates destination information for the vehicle, while a mobile unit determines vehicle position and calculates an expected time of arrival at a way point. The '377 patent also claims use of a plurality of way points for a more accurate calculation of actual road distance to destination and, therefore, a more accurate expected time of arrival.
>
> Claim 1, which is representative of the '377 patent's use of all of the disputed terms, is reproduced below (with emphasis added to show the disputed terms):

---

[1] The parties have repeatedly, as recently as last month, updated the Court as to numerous subsequent authorities, from the Federal Circuit and district courts, which they contend are (or are not) pertinent to the matters under review. (*See* D.I. 234; D.I. 235; D.I. 236; D.I. 237; D.I. 238; D.I. 239; D.I. 240)

> A system for determining an *expected time of arrival* of a vehicle equipped with a mobile unit, comprising:
>
> > a *dispatch* remotely located from the vehicle, the *dispatch* operable to generate destination information for the vehicle, the destination information specifying a plurality of *way points*;
> >
> > a communications link coupled to the *dispatch*, the communications link operable to receive the destination information for the vehicle from the *dispatch*; and
> >
> > the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the *dispatch*, the mobile unit further operable to determine in response to the vehicle position the *expected time of arrival* of the vehicle at a *way point* identified by the destination information and wherein the communications link comprises a cellular telephone network.

(D.I. 167 at 1-2) (internal citations omitted).

## II. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

3

issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the

4

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### B. Noninfringement[2]

"Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope of the claims, followed by (2) determination whether the properly construed claim encompasses the accused structure." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The first step, claim construction, is a matter of law for the Court. The claims in this case have been construed. (D.I. 167; D.I. 168) The second step of the infringement analysis – determining, element-by-element, whether each limitation of a claim is infringed, either literally or by application of the doctrine of equivalents – is a question of fact. *See Bai*, 160 F.3d at 1353.

To prove literal infringement, a party must show that the accused device possesses each and every element of the patent claim at issue. *See Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). Infringement is examined on an element-by-element basis; if an element of

---

[2]VIP asserts infringement by Defendants of "at least claims 1, 3-9, 12, 14-19, 21, 23, 25-30, 32, 35-38, 40-43, and 46-49" of the '377 patent. (D.I. 177 at 2 n.4; D.I. 197 at 3 n.1; D.I. 203 at 2 n.1)

5

the claim is not present in the accused device, then the device does not literally infringe the claim. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). If the accused product includes all of the elements of a claim, or if the accused product is an equivalent under the doctrine of equivalents, the patent remains infringed despite any improvements or additional features in the accused product. *See Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580–81 (Fed. Cir. 1984); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990).

In order to establish infringement under the doctrine of equivalents, there must be an insubstantial difference between the accused system and the corresponding element of the patent-in-suit. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1260 (Fed. Cir. 1989) (patentee must prove accused device "does substantially the same thing in substantially the same way to get substantially the same result") (internal quotation marks omitted). As with literal infringement, infringement under the doctrine of equivalents is analyzed on an element-by-element basis. *See Warner–Jenkinson*, 520 U.S. at 29, 117 S. Ct. 1040.

The "all limitations rule" prevents application of the doctrine of equivalents when doing so would vitiate a claim limitation. *See Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1129 (Fed. Cir. 2008). In deciding whether a finding of infringement under the doctrine of equivalents would vitiate a claim limitation, "the totality of the circumstances of each case" must be considered so that a court may "determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering

6

the pertinent limitation meaningless." *Id.*

When an accused infringer moves for summary judgment of non-infringement, such relief may only be granted if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005): *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of non-infringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement may only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue whether the accused product is covered by the claims. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## III. DISCUSSION

By their motions, Defendants contend there is no genuine dispute that, given the Court's claim construction, there is no infringement, either literally or by equivalence. (*See generally* D.I. 177; D.I. 178; D.I. 182; D.I. 183; D.I. 213; D.I. 215) The Court agrees with Defendants.

### A. TCS/Cellco Defendants

According to VIP, the targeted TCS/Cellco products ("TCS Accused Services") all determine an arrival time in seconds remaining at maneuver points and at destinations based on vehicle position. (D.I. 197 at 5-6) VIP further contends that different builds of these products convert the arrival time at destinations into different formats. (*See id.*) Based upon the conversion of arrival time into different formats, the products may then be sorted into two

7

categories: (i) "Clock-Time-Builds" (aka "ETA Builds"), which "convert the arrival time from seconds into an 'HH:MM AM/PM' format (e.g., 10:45 PM);" and (2) "Travel-Time-Builds," which "convert the arrival time, including any traffic delay, from seconds into a 'remaining time' in an 'HH:MM' format (e.g., 1:45 hrs)." (*Id.* at 6-7; *see also generally* D.I. 213)

### 1. Literal Infringement

VIP contends that TCS/Cellco's "Clock-Time-Builds" literally infringe the asserted claims through the "Find Nearby" or "Find A Place" feature. (*See* D.I. 197 at 1, 3-5, 9-10) According to VIP, using this feature the "Clock-Time-Builds" literally determine an expected time of arrival at an "intermediate" destination along the route (i.e., a "way point") in the "time of day" format, aligning with the Court's construction. (*See id.* at 1, 9-10) VIP explains:

> While navigating to a destination, the driver can use the "Find Nearby" feature to search for and select "intermediate" destinations along the route, such as gas stations, restaurants, and ATMs. When the user selects the intermediate destination, the mobile unit receives modified directions to that destination and determines an arrival time at the intermediate destination in a "time of day" format.

(*Id.* at 3)

Because the '377 patent discloses a system and method "for determining an expected time of arrival of a vehicle," however, and every claim requires the determination of an "expected time of arrival of a vehicle at a way point," TCS/Cellco asserts literal infringement is impossible because none of the services at issue actually make such a determination. (*See* D.I. 178 at 1, 9-13) The Court agrees. Based upon the Court's construction, and given that the TCS Accused Services do not support multiple-destination navigation (*see* D.I. 167; D.I. 168; D.I. 180, Tsurutome Decl., ¶ 7; D.I. 181, Sheha Decl., ¶ 16), the targeted services do not "determine[] a

8

'time of day at which the vehicle is expected to arrive somewhere' (*i.e.*, an 'expected time of arrival') at 'intermediate point(s) on the way to the final destination' (*i.e.*, 'way point(s)')." (D.I. 177 at 1; *see also id.* at 1 nn.1-2; D.I. 178 at 9-13; D.I. 213 at 10-12) Even to the extent any TCS/Cellco "ETA-Build"[3] uses an estimated time of arrival, or determines or displays an estimated time of arrival, this occurs only for the single final destination, not for a "way point." A "way point" is an "intermediate point[] on the way to the final destination (and not the final destination itself)." (D.I. 168 at 1-2) As the record demonstrates, any estimated arrival time is calculated and displayed at the final destination only, but never at an intermediate point on the way. (*See* D.I. 180, Tsurutome Decl., ¶¶ 6-9; D.I. 181, Sheha Decl., ¶¶ 21-25, 36-37)

### 2. Doctrine of Equivalents

VIP contends that the TCS Accused Services infringe under the doctrine of equivalents, as both the "Clock-Time-Builds" and "Travel-Time-Builds" calculate the remaining travel time to a "way point." (*See* D.I. 197 at 1, 3) That is, both builds "determine arrival times at each turn or 'maneuver' in the route (again, 'way points') – but do so in a 'remaining time' format instead of 'time of day.' The difference between these two formats involves a simple mathematical formula and is thus insubstantial." (*Id.* at 1; *see also id.* at 3, 5-6) Under the doctrine of equivalents, in VIP's view, "remaining travel time" format is insubstantially different from a "time of day" format so as to be infringing. (*See id.* at 1, 3, 11-12)

---

[3]VIP has suggested that Defendants developed a new feature called "My Trips" that would allow a user to plan a trip with multiple destinations. (*See* D.I. 197 at 7-8) To the extent VIP alleges literal infringement by such a feature, the record does not support a finding that "My Trips" was implemented in any product. (*See, e.g.,* D.I. 178 at 4, 6, 12-13; D.I. 180, Tsurutome Decl., ¶¶ 11-17 and Exs. A-B; D.I. 198 Ex. 3, Sheha Dep., at 170-75; D.I. 198 Ex. 6, Tsurutome Dep., at 30-43; D.I. 213 at 12; D.I. 214 Ex. J, Goldberg Dep., at 94-95; Tr. at 16, 19-20, 87-88)

9

TCS/Cellco responds that a finding of equivalence would improperly vitiate the "expected time of arrival . . . at a way point" limitation as construed by the Court. (*See* D.I. 178 at 6, 14-15; D.I. 213 at 2-4) The Court has construed "expected time of arrival" to mean "time of day at which the vehicle is expected to arrive somewhere *(and not remaining travel time)*." (D.I. 168) (emphasis added) In Defendants' view, finding infringement under the doctrine of equivalents would vitiate the negative limitation – "and not remaining travel time" – expressly included in the Court's construction. Notwithstanding Plaintiff's contention that vitiation cannot be decided on summary judgment due to the presence of genuine disputes of material fact (*see* D.I. 197 at 1-3, 14-16; D.I. 203 at 12-14), the Court agrees with Defendants.

As the Court has construed the claims, "remaining travel time" is *not* equivalent to "expected time of arrival." That is the meaning of the Court's construction of "expected time of arrival" as "time of day . . . (and *not* remaining travel time)." (D.I. 168 at 1) (emphasis added) The Court agrees with TCS/Cellco that concluding its accused services somehow equivalently satisfy the "expected time of arrival" requirement by determining "remaining travel time" at maneuver points on a route to the final destination would impermissibly vitiate the "expected time of arrival . . . at a way point" limitation.[4]

Here, as a matter of law, no reasonable juror could conclude that "remaining travel time" is equivalent to the "expected time of arrival" limitation, given the Court's construction of that limitation as, in part, "not remaining travel time." *See generally Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) ("Vitiation is not an exception to the doctrine of

---

[4] Given the Court's findings, the Court will not address Defendants' remaining arguments based upon other theories, including prosecution history estoppel and dedication to the public.

equivalents, but instead a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent.") (internal quotation marks omitted); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) ("[T]he concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.") (internal quotation marks omitted). As "no reasonable jury could find equivalence," the Court "must grant summary judgment of no infringement under the doctrine of equivalents." *Id.*

### B. Telenav/AT&T Defendants

VIP accuses two products of Telenav/AT&T: (i) the "Navigator," which is a "personal navigation product that provides mobile users directions to a desired destination along with the expected time of arrival to that destination," but which does not support multiple-destination navigation (D.I. 183 at 8-9; *see* D.I. 185, Rennard Decl., ¶¶ 4-5, 8; Tr. at 21); and (ii) the "Track Premium," which is a fleet management system ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and which also does not support multi-destination navigation (*see* D.I. 183 at 9-10; D.I. 185, Rennard Decl., ¶¶ 11-18; Tr. at 21-22).

#### 1. Literal Infringement

Defendants contend that neither the Navigator nor the Track Premium product calculates an "expected time of arrival" at a "way point" as those terms were construed here.

##### a. Navigator

With respect to Navigator, VIP contends two features literally infringe: (1) using the Telenav website or Telenav Track, subscribers are able to create a trip with multiple destinations (with the list of such destination addresses being communicated to the mobile device and then

11

being available for selection by the subscriber); and (2) using a "Search Along" feature, a user may request navigation instructions to a point of interest. (*See* D.I. 203 at 3-5, 8-9) According to VIP, both of these product features determine an "expected time of arrival" at intermediate destinations (i.e., way points). (*See id.* at 10)

Defendants respond that Navigator does not calculate the time of day that a vehicle is expected to arrive at a way point. (*See* D.I. 183 at 11) "█████████████████████████████████████████████████████████████████████, the Court has made clear that a final destination is not a way point." (*Id.* at 2) With respect to the website, Telenav/AT&T emphasizes that a user can select from his or handset only one destination or address at a time. (*See* D.I. 215 at 1, 3-6) █████████████████████████████████████████████████████████████████████. (*See id.* at 4) Thus, according to Defendants, █████████████████████████████████████, one cannot create routes with intermediate points on the way to another destination. (*See id.* at 5)

The Court agrees with Defendants that, given the Court's construction of "expected time of arrival" and "way points," the record would not support a reasonable jury finding that Telenav/AT&T's products literally infringe the claims of the patent-in-suit. "Expected time of arrival" is not, within the context of the patent-in-suit, "remaining travel time." Likewise, a "final destination" is not, within the context of the patent-in-suit, a way point.

### b. Track Premium

VIP contends that the Track Premium products literally infringe. (*See* D.I. 203 at 4, 9 n.4) Defendants deny infringement for essentially the same reasons as they do so with respect to Navigator: █████████████████████████████████████████████████████████

12

██████████████████████████████████████

██████████████████████████████████████, and not also for a waypoint. (*See* D.I. 183 at 2, 16-17; D.I. 215 at 4) Just as with Navigator, the Court agrees with Defendants' analysis of the literal infringement allegations regarding Track Premium.

### 2. Doctrine of Equivalents

VIP accuses Navigator and Track Premium's navigation functionality of infringing under the doctrine of equivalents, arguing that all of Telenav/AT&T's accused products determine a

██████████████████████████████████████

██████████████████████████████████████

████████. (*See* D.I. 203 at 10-14; *see also* D.I. 183 at 3, 16-17) VIP argues the "remaining travel time" is equivalent to the "time of day" required by the "expected time of arrival" term, and that the difference between a time of day format and a travel time format is insubstantial. (*See* D.I. 203 at 10-12; *see also* D.I. 183 at 2-3, 11-12)

However, the Court agrees with Defendants, who observe that basic navigation capability ██████████████████████████████████████. A finding of infringement by equivalence would vitiate the "expected time of arrival" limitation. (*Id.* at 3, 12-13) Also, a "way point" is not a "final destination" within the meaning of the claims of the patent-in-suit. Hence, the differences between the accused functionality and the patent claims are not insubstantial. The Court will grant the Telenav/AT&T Defendants' motion for summary judgment.

## V. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The TCS/Cellco Motion (D.I. 177) is **GRANTED**.

2. The Telenav/AT&T Motion (D.I. 182) is **GRANTED**.

                                                                                        /s/
                                                                                        UNITED STATES DISTRICT JUDGE