# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 11/18/2014

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

No costs were taxed in this appeal.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

13-1380 - Vehicle IP, LLC v. AT&T Mobility, LLC
United States District Court for the District of Delaware, Case No. 09-CV-1007

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**VEHICLE IP, LLC,**
*Plaintiff-Appellant,*

**v.**

**AT&T MOBILITY, LLC AND TELENAV, INC.,**
*Defendants-Appellees,*

**AND**

**CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC. AND TELECOMMUNICATION SYSTEMS, INC.,**
*Defendants-Appellees.*

———————————

2013-1380

———————————

Appeal from the United States District Court for the District of Delaware in No. 09-CV-1007, Judge Leonard P. Stark.

———————————

Decided: November 18, 2014

———————————

WILLIAM R. WOODFORD, Fish & Richardson P.C., of Minneapolis, Minnesota, argued for plaintiff-appellant. With him on the brief were MICHAEL J. KANE and JOHN A.

DRAGSETH, of Minneapolis, Minnesota, and GEOFF D. BIEGLER, of San Diego, California.

DAVID R. CLONTS, Akin Gump Strauss Hauer & Feld LLP, of Houston, Texas, argued for defendants-appellees, AT&T Mobility, LLC, et al.  With him on the brief were MANOJ S. GANDHI, of Houston, Texas, and L. RACHEL LERMAN, of Los Angeles, California.  Of counsel was REX S. HEINKE, of Los Angeles, California.

VINCENT J. BELUSKO, Morrison & Foerster LLP, of Los Angeles, California, argued for defendants-appellees Cellco Partnership, et al.  With him on the brief were MARTIN M. NOONEN and ALEX S. YAP.

————————————

Before REYNA, WALLACH, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* REYNA.

Opinion dissenting in part filed by *Circuit Judge* WALLACH.

REYNA, *Circuit Judge*.

Vehicle IP, LLC ("Vehicle IP") appeals from a final judgment of non-infringement of U.S. Patent No. 5,987,377 ("the '377 patent") from the United States District Court for the District of Delaware in favor of Defendants-Appellees AT&T Mobility, LLC; TeleNav, Inc.; Cellco Partnership; Networks in Motion, Inc.; and TeleCommunication Systems, Inc. (collectively, "Appellees").  Because we agree with Vehicle IP that the district court erred in its construction of the claim terms "expected time of arrival" and "way point(s)," we reverse the district court's constructions, vacate the district court's grant of summary judgment of noninfringement, and remand for a determination of infringement based on the proper constructions of these terms.

BACKGROUND

## I.   Background of the Technology

Vehicle IP alleges that the Appellees infringe the '377 patent, entitled "Method and Apparatus for Determining an Expected Time of Arrival." The '377 patent is directed to improving vehicle navigation systems through more efficient distribution of navigation functions between a remote dispatch and a mobile unit located in the vehicle. The '377 patent claims a system in which a remotely located dispatch generates destination information for the vehicle, while a mobile unit in the vehicle determines vehicle position and calculates an expected time of arrival at a destination.[1]   Such destination information may include, for example, one or more destinations, routing information, information regarding tasks to be performed at each destination specified, average travel time to each destination, rush hour, traffic and weather information.

Figure 2 of the '377 patent illustrates this process.

---

[1]   The patent provides that the destination information may also be generated locally at the mobile unit. '377 patent col. 6 ll. 2-4.



*FIG. 2*

'377 patent fig. 2.  Figure 2 shows that dispatch 20 communicates with mobile unit 42 through mobile telecommunications switching office 32 and transmitter site 34. The destination information is then sent to mobile unit 42 and is used to determine the vehicle's expected time of arrival at one or more destinations, such as C, D, or E.

The '377 patent also claims the use of a plurality of way points for a more accurate calculation of road distance to the destination, allowing for a more accurate calculation of expected time of arrival at a final destination.  Once mobile unit 42 in the vehicle receives the destination information, it determines the vehicle's current position and compares it to the way points along the route, such as way points C and D.  Mobile unit 42 then determines the expected time of arrival for one or more destinations, such as C, D, or E, to provide an updated expected time of arrival as the vehicle changes position throughout the trip.

Claim 1 is representative of the '377 patent's use of the disputed claim terms and is reproduced below.

　　　1. A system for determining an *expected time of arrival* of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of *way points*;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the *expected time of arrival* of the vehicle at a *way point* identified by the destination information and wherein the communications link comprises a cellular telephone network.

'377 patent col. 14 l. 62-col. 15 l. 13 (claim 1) (emphases added).

## II. Procedural Background

　　On December 31, 2009, Vehicle IP filed this action against Appellees in the United States District Court for the District of Delaware, asserting that Appellees infringe the '377 patent. On December 12, 2011, the district court issued an order construing the disputed claim terms of the '377 patent, including "expected time of arrival" and "way point(s)." The district court construed "expected

time of arrival" as "time of day at which the vehicle is expected to arrive somewhere (and not remaining travel time)." The district court construed "way point(s)" as "intermediate point(s) on the way to the final destination (and not the final destination itself)."

After the district court construed the claims, Appellees filed two motions for summary judgment. TeleCommunication Systems, Inc.; Networks in Motion, Inc.; and Cellco Partnership (collectively, "TCS/Cellco") filed a motion for summary judgment of noninfringement as to the TCS/Cellco accused systems. TeleNav, Inc. and AT&T Mobility LLC (collectively, "TeleNav/AT&T") filed a second motion for summary judgment of noninfringement as to the TeleNav/AT&T accused systems.[2]

The district court granted both motions. First, the district court found that TCS/Cellco's accused products did not literally infringe because the accused features do not "determine[] a 'time of day at which the vehicle is expected to arrive somewhere' . . . at 'intermediate point(s) on the way to the final destination.'" The district court noted that to the extent the features display an "expected time of arrival," these features did so only for single destinations, not for a "way point." The district court went on to hold that the TCS/Cellco defendants did not infringe under the doctrine of equivalents because, under Vehicle IP's theory, such a finding would vitiate the court's construction of "expected time of arrival." The district court similarly found that TeleNav/AT&T's accused products did not infringe because they only determined the expected travel time to a final destination. Again, under Vehicle IP's doctrine of equivalents theory of

---

[2] The TCS/Cellco accused systems include, *inter alia*, the TCS Navigator and AtlasBook Navigator platform. The TeleNav/AT&T accused systems include Navigator and Track Premium.

infringement, the district court determined that a finding of infringement would vitiate the court's claim construction of these terms.  Thus, the district court granted both motions.

On April 19, 2013, the district court entered judgment in favor of Appellees.  Vehicle IP appeals the entry of judgment, challenging the district court's claim constructions and summary judgment rulings.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review district court claim constructions de novo. *Lighting Ballast Control LLC v. Philips Elec. N. Am. Corp.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (en banc).

a.   "expected time of arrival"

The district court construed "expected time of arrival" as "time of day at which the vehicle is expected to arrive somewhere (and not remaining travel time)."  In doing so, the district court determined that "expected time of arrival" was consistently used by the patentee to mean a time of day.  The district court held that "expected time of arrival" could not include remaining travel time because the mobile unit must be capable of comparing the "expected time of arrival" to an appointment time, which the specification repeatedly lists in clock-time format.

Vehicle IP argues that the district court erred in excluding remaining travel time from the construction of "expected time of arrival."  Vehicle IP argues that "as a matter of common sense," if someone were to ask what time one expects to arrive, the answers "in 30 minutes" and "2:00 p.m." would be equally acceptable.  Vehicle IP asserts that the parties' dispute regarding "expected time of arrival" centers on the term "time," and the colloquial meaning of "time" is broad.  Vehicle IP also contends that the language surrounding the term "time" indicates it should not be limited to a particular format.

Appellees respond that the parties' dispute is not focused on the term "time," as Vehicle IP would like this court to believe, but instead is focused on the term "expected time of arrival."[3]  Appellees argue that Vehicle IP disregards the framework set forth by *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc), *cert. denied,* 546 U.S. 1170 (2006), by proposing a "dictionary-definition-first" approach.  Appellees further argue that "expected time of arrival" must be construed to enable comparison to an "appointment time," which shows it must be in clock-time format.  Appellees reason that "expected time of arrival" cannot include "remaining travel time."

The district court erred in excluding remaining travel time from the construction of "expected time of arrival."  Generally, claim terms are given their ordinary and customary meaning as understood by one of skill in the art at the time of the invention.  *Id.* at 1312-13 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Innova Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  There are two exceptions to this rule: (1) when a patentee sets out a definition and acts as his own lexicographer; or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580).  A patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning to act as his own lexicographer.  *Id.* (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  In order to disavow claim

---

[3]  The TeleNav/AT&T appellees join the arguments made by the TCS/Cellco appellees in their brief as to the proper constructions of the terms in dispute.

scope, the specification must make clear that the invention does not include a particular feature otherwise within the scope of the claim term.  *Id.* at 1366.

As an initial matter, we decline Vehicle IP's invitation to focus our review on the embedded term "time."  Our review focuses on the district court's construction of "expected time of arrival," and our review focuses on this term as a whole.  *See IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011) ("Extracting a single word from a claim divorced from the surrounding limitations can lead construction astray.").

We conclude that the term "expected time of arrival" is not limited to clock-time.  The term is broadly used in the claims of the '377 patent.  *See, e.g.*, '377 patent col. 14 l. 62-col. 15 l. 13 (claim 1), col. 15 ll. 18-23 (claim 4).  For example, claim 1 requires:

> 1. A system for determining an *expected time of arrival* of a vehicle equipped with a mobile unit, comprising:
>
> . . .
>
> the mobile unit further operable to determine in response to the vehicle position the *expected time of arrival* of the vehicle at the destination identified by the destination information, the mobile unit further operable to determine if the *expected time of arrival* differs from the corresponding appointment time for the destination by more than a predetermined amount.

*Id.* col. 14 l. 62-col. 15 l. 13 (claim 1) (emphases added). Nothing in this or any other claim of the '377 patent limits "expected time of arrival" to clock-time.

The claim provides that the mobile unit determines the "expected time of arrival" in remaining travel time based on the destination information transmitted by the dispatch. *Id.* col. 14 l. 62-col. 15 l. 13 (claim 1). The mobile unit uses factors such as average travel time, weather conditions, and traffic information to determine the "expected time of arrival." *See, e.g.*, *id.* col. 3 ll. 1-7, col. 11 ll. 6-12. To do so, the mobile unit will take the average travel time contained in the destination information and modify it based on other destination information, such as traffic conditions, weather, and similar information. Thus, the expected time of arrival will be calculated in remaining travel time. The expected time of arrival may be then converted to clock-time format, but the patent does not so require. As such, "expected time of arrival" is a broad term that can encompass remaining travel time.

Appellees are correct that some of the disclosed embodiments in the written description focus on clock-time. *See, e.g.*, *id.* fig. 4, col. 10 ll. 28-41. Yet, these examples are not limiting. The written description of the '377 patent uses the phrase "expected time of arrival" numerous times, and it never indicates that the time must be in any particular format. Many portions of the written description are ambiguous as to the format of the "expected time of arrival." *See, e.g.*, *id.* col. 1 l. 44-col. 2 l. 1-33 (Summary of the Invention section describing two embodiments). More importantly, there is no dispute that the specification does not contain an express definition of the term, and nowhere in the specification do the inventors disclaim remaining travel time.

We also reject Appellees' argument that the "expected time of arrival" must be in clock-time format in order for the mobile unit to compare it to an appointment time. As noted previously, the claims focus on the calculation of "expected time of arrival" by the mobile unit, which can use one format for computing and another format for

display. Indeed, the mobile unit could be programmed to maintain the time in any number of different formats. No matter the format, a simple mathematical conversion performed by the device would allow the mobile unit to perform the claimed comparison. Appellees have failed to show that the '377 patent requires the claim term to be in clock-time format or that a clear disavowal or lexicographic choice limits this term to clock-time format.

The prosecution history similarly fails to disavow scope or define the term in a limited manner, as Appellees suggest. Both parties point to the same portion of the prosecution history to support their respective positions. This section of the prosecution history provides:

> Furthermore, neither Ross nor Jones disclose, teach, or suggest a mobile unit operable to determine if an expected time of arrival differs from a corresponding appointment time for a destination by more than a predetermined amount, as recited in Applicants' Claim 1.

J.A. 3117 (emphases omitted). This portion of the prosecution history is irrelevant to the parties' dispute regarding remaining travel time. Indeed, the prosecution history, like the specification, is ambiguous as there is no disavowal of remaining travel time, nor is the term limited to clock-time format.

In sum, the intrinsic evidence fails to show that "expected time of arrival" is limited to a time of day. Neither the district court nor Appellees point to any express disclaimer or independent lexicography in the intrinsic record that justifies including the negative limitation "not remaining travel time" in the proper construction of "expected time of arrival." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (citing *CCS Fitness*, 288 F.3d at 1366-67). Thus, the district court erred in reading in this limitation. We hold that the

proper construction of "expected time of arrival" is "time of day at which the vehicle is expected to arrive somewhere."

> b.   "way point(s)"

The district court construed "way point(s)" as "intermediate point(s) on the way to the final destination (and not the final destination itself)." The district court determined that the patentee used the term "way point(s)" only in the context of determining whether a vehicle is out of route and for more accurate calculations of actual road distance.

Vehicle IP argues that the district court erred because the written description makes clear that "way point(s)" may include the final destination. Vehicle IP argues that the written description distinguishes between "intermediate" way points and other way points. Vehicle IP also argues that the district court's construction is wrong because it excludes the preferred embodiment described with respect to figure 1. Finally, Vehicle IP argues that the claims recite the term "way point(s)" without any modifiers and provide that the plurality of way points is included in the "*destination* information." Thus, Vehicle IP concludes that "way point(s)" may include the destination.

Appellees respond that the '377 patent's description of figure 2 shows that "way point(s)" may not include the final destination because it distinguishes way points C and D from destination E. Appellees also argue that the district court's construction properly excludes the embodiment in figure 1 because this embodiment was claimed by the parent of the '377 patent. Finally, Appellees point to contemporaneous dictionary definitions that support their position that a "way point" cannot include the final destination.

The district court erred in excluding final destinations from its construction of "way point(s)."  The independent claims require that the destination information sent by the dispatch include "a plurality of way points" and that the mobile unit be capable of determining an "expected time of arrival" at a "way point."  *See, e.g.*, '377 patent col. 14 ll. 66-67 (claim 1) ("the destination information specifying a plurality of way points"), col. 17 ll. 6-7 (claim 32) ("The method of claim 23, further comprising the step of displaying the way points on a map.").  The claims use the term "way point(s)" in a broad manner.

The written description similarly uses the term in a broad manner.  First, the written description distinguishes between "way point(s)" and "intermediate way points."  *Id.* col. 9 ll. 33-35 ("Besides reducing out-of-route mileage, the use of intermediate way points improves the calculation of expected time of arrival.").  It provides that "way points may be used as intermediate points between the position of vehicle 40 and the destination."  '377 patent col. 9 ll. 37-39.  This permissive language indicates that "way point(s)" may be more than just intermediate points along the route.

The district court misinterpreted the written description.  The portion of the written description that describes figure 2 provides:

> To alleviate this problem, destinations C and D may be used as way points to determine whether the operator of vehicle 40 has driven out of route 52a specified in the destination information generated by dispatch 20.  Referring to FIG. 2, dispatch 20 generates destination information specifying that vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D.

*Id.* col. 9 ll. 5-12.  As Vehicle IP points out, this portion of the written description focuses on determining whether a

vehicle has driven outside of the intended route. Doing so requires looking to way points C and D because they are intermediate to the starting point and destination. The fact that the specification refers to "destination E" does not change this conclusion. The specification uses the terms "destination" and "way point(s)" interchangeably. *E.g.*, *compare* '377 patent col. 8 ll. 28-33 (referring to points C and D in figure 2 as destinations), *with id.* col. 9 ll. 12-32 (referring to points C and D in figure 2 as way points). Nothing about this example excludes the final destination E from also being viewed as a "way point."

The parties present competing extrinsic evidence, including an owner's manual for one of the first Garmin GPS navigation products from 1992, a contemporaneous patent from 1992, dictionary definitions from a technical dictionary published in 1994 and a non-technical dictionary published in 1993, and two websites from 1998 and 2009. We need not look at this evidence because the intrinsic evidence is clear that there was no disavowal or lexicographic choice. *See Phillips*, 415 F.3d at 1324 (noting extrinsic evidence is properly used in claim construction unless it is used to vary the meaning of an unambiguous claim term). As this court noted in *Phillips*, there is an "unbounded universe" of potential extrinsic evidence having differing levels of relevance, and each party will naturally choose the pieces most favorable to its position. *Id.* at 1318. Here we are presented with such a situation. The extrinsic evidence conflicts as to the proper meaning and is generally of marginal relevance to the meaning of the term "way point(s)" as used in the '377 patent in February 1995.

As with "expected timed of arrival," nothing in the patent shows a disavowal of claim scope or a lexicographic decision to limit the definition of this term. For this reason, the district court erred in limiting the term "way point(s)" to intermediate destinations along a route. We hold that the proper construction of "way point(s)" is "a

geographical point of reference or destination along a route."

## CONCLUSION

The district court erred in its construction of the terms "expected time of arrival" and "way point(s)," and relying on these erroneous constructions, granted summary judgment of non-infringement in favor of Appellees. We reverse the district court's claim constructions, vacate the final judgment of non-infringement, and remand for a determination of infringement based on the proper constructions of these terms in the first instance.

### REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

## COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**VEHICLE IP, LLC,**
*Plaintiff-Appellant,*

**v.**

**AT&T MOBILITY, LLC AND TELENAV, INC.,**
*Defendants-Appellees,*

**AND**

**CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC. AND TELECOMMUNICATION SYSTEMS, INC.,**
*Defendants-Appellees.*

———————————

2013-1380

———————————

Appeal from the United States District Court for the District of Delaware in No. 09-CV-1007, Judge Leonard P. Stark.

———————————

WALLACH, *Circuit Judge*, dissenting-in-part.

While the majority opinion correctly recognizes that claim terms "are generally given their ordinary and customary meaning," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), it ignores the ordinary and customary meaning of the claim term "way

2                    VEHICLE IP, LLC v. AT&T MOBILITY, LLC

point(s)" in U.S. Patent No. 5,987,377 ("the '377 Patent"). For this reason, I respectfully dissent-in-part.

### I.

As the majority opinion correctly recites, claim terms "are generally given their ordinary and customary meaning . . . [which] is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312–13 (internal citations and quotation marks omitted). The majority opinion also acknowledges the two exceptions to this rule: (1) when a patentee acts as his or her own lexicographer by articulating a definition in the specification; or (2) when the patentee disavows the full scope of the ordinary and customary meaning of the claim term in the specification or during patent prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

The '377 Patent discloses a system in which a remotely-located dispatch generates destination information for a vehicle, while a mobile unit in the vehicle determines vehicle position and calculates an "expected time of arrival" at a destination. '377 Patent col. 1 ll. 52–65. The '377 Patent also describes using "way points" "to determine whether the operator of [a] vehicle . . . has driven out of route" or "to more accurately calculate actual road distance." *Id.* col. 9 ll. 6–8, 39. In doing so, the '377 Patent uses the term "way point(s)" according to its ordinary and customary meaning in the pertinent art. That is, in navigation, a way point, like a way station, is a

point *on the way* to a destination.[1]  As the majority opinion recognizes, "nothing in the patent shows a disavowal of claim scope or a lexicographic decision to limit the definition of this term."  Maj. Op. at 14.

Claim 1 is representative of how "way point(s)" is used in the '377 Patent's claims: "the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information."  '377 Patent col. 15 ll. 7–12.  The claims also describe traveling along "a predetermined route specified by the way points," *id.* col. 15 ll. 19–20, col. 15 ll. 26–27, col. 16 l. 3, col. 16 ll. 9–10, col. 16 ll. 53–54, col. 16 ll. 60–61, col. 17 ll. 58–59, col. 19 ll. 22–23, col. 20 ll. 49–50, and include systems "wherein the way points comprise highway crossings," *id.* col. 15 ll. 16–17, col. 15 ll. 66–67, col. 16 ll. 48–49, col. 17 ll. 36–37, col. 19 ll. 5–6, col. 20 l. 42.

Besides the use of the term "way point(s)" in the claim language itself, the *only* part of the specification that discusses way point(s) is in the description of Figure 2, reproduced below.  Nowhere else are way points discussed.

---

[1]   Indeed, the United States Army has for decades used intermediary points between points of origin and destinations to assist with, among other things, calculating the distance to a final destination. *See, e.g.*, Department of the Army, Field Manual 21-26: Map Reading 37–41 (1956); Department of the Army, Field Manual 21-26: Map Reading and Land Navigation App. J (1993).



*Id.* Fig. 2.

According to the specification, Figure 2 "illustrates a system 10a for determining expected times of arrival at a plurality of destinations. . . . In this embodiment of the present invention, the destination information generated by dispatch 20 includes several destinations and corresponding appointment times," *id.* col. 8 ll. 28–36, and "mobile unit 42 determines the expected times of arrival of vehicle 40 at destinations C, D, and E," *id.* col. 8 ll. 43–45.

In the context of this embodiment, the specification describes "[a] problem that trucking companies have often faced," namely, "that operators of trucks, either intentionally or unintentionally, drive considerable distances from their assigned routes.  Because trucking companies must pay for the additional fuel and maintenance expenses associated with the increased mileage, these out-of-route miles are extremely costly to trucking companies."

*Id.* col. 8 l. 66–col. 9 l. 5.  Subsequently, in the first in-
stance where "way point(s)" is used in the patent, the
specification states:

> To alleviate this problem, destinations *C and D
> may be used as way points* to determine whether
> the operator of vehicle 40 has driven out of route
> 52a specified in the destination information gen-
> erated by dispatch 20.  Referring to FIG. 2, dis-
> patch  20  generates  destination  information
> specifying that vehicle 40 is to proceed to destina-
> tion E along route 52a, thus passing through *way
> points C and D.*  Mobile unit 42 may be configured
> to  update  dispatch  20  when  vehicle  40  has
> reached a way point.  In this way, dispatch 20
> may be notified that vehicle 40 is still in route.

*Id.* col. 9 ll. 5–14 (emphases added).  In addition, still in
the context of the embodiment in Figure 2, the patent
describes an alternate use of "way point(s)":

> Besides reducing out-of-route mileage, the use of
> intermediate way points improves the calculation
> of expected time of arrival.  Specifically, the actual
> distance between the position of the vehicle 40
> and the destination may not be the road distance.
> *Way points may be used as intermediate points be-
> tween the position of the vehicle 40 and the desti-
> nation* in order to more accurately calculate actual
> road distance.

*Id.* col. 9 ll. 33–39 (emphasis added).

Relying on this written description, the district court
construed "way point(s)" as "intermediate point(s) on the
way to the final destination (and not the final destination
itself)."  *Vehicle IP, LLC v. AT&T Mobility, LLC*, No. 09-
1007-LPS, at 9 (D. Del. Dec. 12, 2011) (J.A. 1452–66) ("Cl.
Const.  Op.").   The district court found support for its
construction in "the language of the patent," which "ex-

cludes a final destination from the definition of a way point" because "in a multiple-destination route (having destinations C, D, and E) . . . the patent distinguishes between intermediate destinations C and D that can be used as 'way points' on the route and destination E." *Id.* (citing '377 Patent col. 9 ll. 6–8). As the district court points out, "[a] vehicle that has reached the final destination is not 'in route.'" *Id.* This construction reflects the ordinary and customary meaning of the term in the art.

## II.

Nonetheless, while correctly articulating the governing law, the majority deviates from the ordinary and customary meaning of "way point(s)," despite the absence of a lexicography or disavowal of claim scope. Specifically, the majority opinion points to the patent's use of the term "way point(s)" in a "broad manner," Maj. Op. at 13, to support its conclusions that "[t]he district court erred in excluding final destinations from its construction of 'way point(s)'" and "erred in limiting the term 'way point(s)' to intermediate destinations along a route," *id.* at 13, 14.

In support, the majority opinion points to the claim language and to the written description, which it states both use "way point(s)" "in a broad manner." *Id.* at 13. In particular, the majority points to language that distinguishes between "way point(s)" and "intermediate way points," and language that "provides that 'way points may be used as intermediate points between the position of vehicle 40 and the destination.'" *Id.* (quoting '377 Patent col. 9 ll. 33–39). The majority then inexplicably concludes that "[t]his permissive language indicates that 'way point(s)' may be more than just intermediate points along the route." *Id.*

In so stating, the majority uses "permissive language" to broaden the term beyond its ordinary and customary meaning in the art as a point on the way to a destination. While it is not appropriate to restrict the meaning of a

claim term to something less than its ordinary meaning absent explicit lexicography or clear disavowal, *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011), it is equally inappropriate to expand the scope of a claim term beyond such a meaning. The majority does just that in holding "that the proper construction of 'way point(s)' is 'a geographical point of reference *or destination* along a route.'" Maj. Op. at 14–15 (emphasis added). Defining "way point(s)" as including final destinations is not part of the term's ordinary and customary meaning, and is unworkable in the context of navigation, as explained below.

III.

The majority also finds support for its unusual construction of "way point(s)" in the specification's description of Figure 2, which it claims supports the notion that a final destination may also be used as a way point. *See* '377 Patent col. 9 ll. 5–12. The majority states "this portion of the written description focuses on determining whether a vehicle has driven outside of the intended route," and "[d]oing so requires looking to way points C and D because they are intermediate to the starting point and destination. . . . Nothing about this example excludes the final destination E from also being viewed as a 'way point.'" Maj. Op. at 13–14. However, the majority overlooks the fact that point E cannot be used as a way point, either "to determine whether the operator of [a] vehicle . . . has driven out of route" as in this portion of the specification, or "to more accurately calculate road distance," '377 Patent col. 9 ll. 6–8, l. 39. It is unclear why point E, which the patent characterizes as "destination E," would be considered a way point, in conflict with the ordinary and customary meaning of "way point(s)," when it <u>cannot</u> fulfill the function of that claim term.

In contrast to the majority's view, the portion of the specification it quotes does not demonstrate that "way

point(s)" includes a final destination. Describing Figure 2, the specification states "dispatch 20 generates destination information specifying that vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D." *Id.* col. 9 ll. 9–12. This statement, describing "way points" as intermediate points on the way to the destination, comports with the ordinary and customary meaning of term and does not evince a clear lexicography or disavowal of claim scope.

This conclusion is also made clear by the specification's description of "way point(s)" as points on the way to a destination. *Id.* col. 9 ll. 37–39 ("Way points may be used as intermediate points between the position of vehicle 40 and the destination in order to more accurately calculate actual road distance."). Furthermore, the specification does not use the words "destination" and "way point" synonymously. In addressing multiple-destination routes, the specification refers to points C and D as destinations, *id.* col. 8 ll. 28–65, while the part describing the use of way points distinguishes between a way point and a destination: "vehicle 40 is to proceed to *destination* E along route 52a, thus passing through *way points* C and D," *id.* col. 9 ll. 10–12 (emphases added). The written description does not lend support to a construction that would alter the ordinary and customary meaning of "way point(s)."

## IV.

Finally, in regard to the single-destination embodiment of Figure 1 of the '377 Patent, as the district court noted, the '377 Patent issued as a continuation of U.S. Patent No. 5,724,243 ("the '243 Patent."). The claims of the '243 Patent were each directed to determining the "expected time of arrival" at "the destination," *e.g.*, '243 Patent col. 15 ll. 10–11, while the claims of the '377 Patent each determine the "expected time of arrival" at a "way point," *e.g.*, '377 Patent col. 15 ll. 10–11; *see* Cl.

Const. Op. at 10 ("[T]he '377 patent claims are directed at determining expected time of arrival at a way point, while its parent patent '243 claims are directed at calculating 'the expected time of arrival of the vehicle at the destination.'").   Thus, the district court concluded that since the '243 Parent Patent already covers the single-destination embodiment, it was unremarkable that the '377 Patent does not.   Indeed, it is unclear how this embodiment fulfills the "plurality of way points" requirement of each independent claim of the '377 Patent.   Even if the destination were considered a way point, in order to meet the claim limitations, the point of origin would also have to be considered a way point.   Such a construction is not part of the term's ordinary and customary meaning as understood by a skilled artisan; it is simply bizarre in the context of navigation.

Nonetheless, that the patentee included the Figure 1 embodiment does not serve as evidence that the patentee "'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning."   *Thorner*, 669 F.3d at 1365 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)); *see also id.* ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008))).   Nor does the inclusion of the single-destination embodiment "'demonstrate [an] intent to deviate from the ordinary and accustomed meaning of [way point(s)] . . . by . . . representing a clear disavowal of claim scope.'"   *Id.* at 1366 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002)).

## V.

In the absence of express lexicography or clear disavowal, "way point(s)" should be given its ordinary and

10                    VEHICLE IP, LLC v. AT&T MOBILITY, LLC

customary meaning in the art.  Because the majority fails
to do so, but rather broadens the scope of the term beyond
its ordinary and customary meaning, I respectfully dis-
sent.

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Panel Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the

merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### INFORMATION SHEET

### FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File**. You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999