# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEHICLE IP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br>CELLCO PARTNERSHIP,<br>NETWORKS IN MOTION, INC.,<br>TELECOMMUNICATION SYSTEMS, INC.,<br>and TELENAV, INC.,<br><br>    Defendants. | C.A. No. 09-1007-LPS |

**DEFENDANTS TELECOMMUNICATION SYSTEMS, INC., NETWORKS IN MOTION, INC., AND CELLCO PARTNERSHIP'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS THAT ALL ASSERTED CLAIMS OF U.S. PATENT NO. 5,987,377 ARE INVALID UNDER 35 U.S.C. § 101**

*Of Counsel:*

Edward A. Pennington
Siddhesh V. Pandit
John P. Moy
Sean T. C. Phelan
John P. Pennington
Jennifer L. Feldman
SMITH, GAMBRELL & RUSSELL, LLP
1055 Thomas Jefferson St. NW, Suite 400
Washington, D.C. 20007
(202) 263-4300
epennington@sgrlaw.com
spandit@sgrlaw.com
jmoy@sgrlaw.com
sphelan@sgrlaw.com
jpennington@sgrlaw.com
jfeldman@sgrlaw.com

Dated: January 28, 2016

ASHBY & GEDDES
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants
TeleCommunication Systems, Inc.,
Networks In Motion, Inc., and
Cellco Partnership*

# TABLE OF CONTENTS

I. ARGUMENT ........................................................................................................................1

    A. Step 1 of the *Alice* Framework Was Properly Performed, As the Basic Concept of the Asserted Claims is the Abstract Idea of Determining an Expected Time of Arrival ........................................................................................1

    B. The '377 Patent Claims Do Not Require Specialized Equipment and Do Not Satisfy the Machine-or-Transformation Test........................................................4

    C. The *Wireless Media* and *MacroPoint* Cases are Persuasive ...................................8

    D. The Resemblance of the '377 Patent Claims to Routine Human Activity Confirms That the '377 Patent is Directed to Ineligible Subject Matter .................9

II. CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ...................................................................................3

*Alice Corp. Pty. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)..................................................................................... *passim*

*Bancorp Servs., LLC v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ................................................................................7, 8

*Bancorp Servs., LLC v. Sun Life Assur. Co.*,
   771 F. Supp. 2d 1054 (E.D. Mo. 2011) ........................................................................6

*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010)...........................................................................................2, 4, 8

*Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ...................................................................................2

*Cybersource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) .................................................................................10

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assoc., Inc.*,
   76 F. Supp. 3d 513 (D. Del. 2014)...........................................................................7, 8

MacroPoint, LLC v. FourKites, Inc.,
   No. 1:15-cv-1002,
   2015 WL 6870118 (D. Ohio. Nov. 6, 2015).........................................................1, 8, 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)......................................................................................4, 6, 10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ...................................................................................7

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
   No. 13-cv-1608-RGA,
   2015 WL 4730906 (D. Del. Aug. 10, 2015)...............................................................4

*Pragmatus Telecom, LLC v. Genesys Telecomm.*,
   No. 14-cv-26-RGA,
   2015 WL 4128963 (D. Del. July 9, 2015) ..................................................................4

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ...................................................................................6

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
   No. 13-cv-1771-RGA,
   2015 WL 1387815 (D. Del. Mar. 25, 2015) ...............................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ................................................................................2, 8

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  No. 14-cv-7004,
  2015 WL 1810378 (D.N.J. Apr. 20, 2015) ........................................................................... 1, 8, 9

**Statutes**

35 U.S.C. § 101 ........................................................................................................... 1, 2, 3, 10

I.      ARGUMENT

Plaintiff's Opposition (D.I. 318) is nothing more than a collection of meritless, unsubstantiated arguments made in a futile attempt to rescue its patent from its inevitable fate – a finding of invalidity under 35 U.S.C. § 101. As set forth in detail below, Plaintiff' Opposition fails for at least the following reasons:

- Defendants properly applied the *Alice* framework in arguing that the basic concept of the asserted claims is the abstract idea of determining an expected time of arrival.

- The '377 patent claims do not require specialized equipment and do not satisfy the machine-or-transformation test.

- Plaintiff fails to distinguish the persuasive *Wireless Media* and *MacroPoint* cases.

- The resemblance of the asserted claims to conventional human activity confirms that the asserted claims are drawn to ineligible subject matter.

A.      **Step 1 of the *Alice* Framework Was Properly Performed, As the Basic Concept of the Asserted Claims is the Abstract Idea of Determining an Expected Time of Arrival**

Plaintiff cannot reasonably dispute that the basic concept of the asserted patent claims is determining an expected time of arrival. The title of the patent is "Method and Apparatus for Determining Expected Time of Arrival." In its Summary of the Invention, the '377 patent states that "One aspect of the present invention provides a system for determining an expected time of arrival that integrates positioning technology with an existing mobile communications infrastructure." '377 patent, col. 1, lines 44-51. Moreover, *every single claim of the '377 patent* – including the fifteen claims asserted by Plaintiff – expressly states that it is either a system, method, or apparatus "for determining the expected time of arrival."

Notably, Plaintiff does not argue that the determination of an expected time of arrival is not an abstract idea. Instead, Plaintiff contends that it is improper to identify the "basic concept" of the patent claims in conducting the Section 101 analysis. (D.I. 318 at 5-7). This contention is

belied by the very language expressly used by the Supreme Court in *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

The first step of the framework set up by the Supreme Court in *Alice* is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. Applying that framework to the patent claims at issue, the *Alice* Court stated, "On their face, the claims before us are drawn to **the concept** of intermediated settlement." *Alice*, 134 S. Ct. at 2355-56 (emphasis added). The *Alice* Court further added that the patent claims at issue in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), were directed to "**the basic concept** of hedging, or protecting against risk" – using the very language that Plaintiff now claims is improper. *Alice*, 134 S. Ct. at 2356 (emphasis added).[1]

Plaintiff further argues that it is improper to focus on a single claim, specifically, claim 23, in the Section 101 analysis. (D.I. 318 at 7-8). Plaintiff complains that there was no explanation as to how claim 23 could be representative of all the asserted claims, and that moreover, claim 23 is not an asserted claim. (*Id.*).

This argument smacks of desperation. Defendants' opening brief (D.I. 312) clearly states that the asserted claims are all dependent claims, and that they depend from either claim 1, claim 12, or claim 23. (D.I. 312 at 3). The text of claims 1, 12, and 23 were recited in their entirety to establish that they are directed to the same functions. (D.I. 312 at 3-4).

The basic concept of independent claim 23, which is plainly evident from a review of its claim language, is determining an expected time of arrival. Accordingly, independent claims 1

---

[1] The Federal Circuit, in applying the framework established in *Alice*, uses similar language. *See, e.g.*, *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (reducing claim elements to the "**basic concept** of data recognition and storage") (emphasis added); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) (determining "the abstract idea at the **heart** of the '545 patent" was use of an advertisement as an exchange or currency) (emphasis added).

and 12, which are the system and apparatus analogues to claim 23, are also directed to the same basic concept of determining an expected time of arrival. *See Alice*, 134 S. Ct. at 2360 (where method claims recite an abstract idea, so did system claims as "the system claims are no different from the method claims in substance"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (method and system/apparatus claims "should rise or fall together" under Section 101 where such claims "contain only 'minor differences in terminology but require performance of the same basic process'") (citations omitted).

The limitations found in the asserted claims, which all depend from claims 1, 12, or 23, were also fully described in the opening brief. (D.I. 312 at 5). These limitations further restrict what information is used to determine an expected time of arrival or the technological environment used in making that determination, but they do nothing to alter the claims' basic concept of determining an expected time of arrival. Indeed, Plaintiff does not explain how, for instance, claiming traffic information or a GPS receiver transform the basic concept identified in the preamble of determining an expected time of arrival into a patent-eligible application.

Plaintiff then argues that the asserted claims of the '377 patent are directed not to the abstract idea of determining an expected time of arrival, but rather, to "a distributed system that includes a remote dispatch and a mobile unit that performs specific functions to provide the most accurate expected arrival time and improved features for the driver." (D.I. 318 at 8). First of all, neither the asserted claims nor the specification of the patent say anything about providing "the most accurate expected arrival time and improved features for the driver." These are merely purported features that Plaintiff is inspired to identify in litigation. Regardless, as stated above, the '377 patent title, specification and claim preamble make explicit that the claims are directed to determining an expected time of arrival. As the *Alice* Court stated, "limiting the use of an
{01083220;v1 }       3

abstract idea 'to a particular technological environment,'" as Plaintiff tries to do here with its recitation of a "distributed system," a "remote dispatch" and a "mobile unit," is insufficient to confer patent eligibility. *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610 (2010)). Moreover, whether the '377 patent allegedly solves a particular problem or discloses an alleged improvement over prior work, as Plaintiff purports to be the case, is unrelated to whether the basic concept of the patent claims is directed to patent-ineligible subject matter. *Pragmatus Telecom, LLC v. Genesys Telecomm.*, No. 14-cv-26-RGA, 2015 WL 4128963, at *5 (D. Del. July 9, 2015) ("Even if Plaintiff were correct that the invention provides a compelling technological solution to the aforementioned problems, the patent is fundamentally directed to the abstract idea of connecting customers to call centers.").

Plaintiff also alleges that the '377 patent does not preempt an entire field and is therefore patent-eligible. (D.I. 318 at 15-16). Although the asserted claims do not entirely foreclose all determinations of expected time of arrival, the claims encompass "well-understood, routine, conventional activity." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012). Thus, "upholding the patents would risk disproportionately tying up the use of the underlying" conventional steps. *Id.* In any event, "there is no rule that ideas that do not preempt an entire field are *per se* patent eligible." *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, No. 13-cv-1608-RGA, 2015 WL 4730906, at *3 (D. Del. Aug. 10, 2015).

### B. The '377 Patent Claims Do Not Require Specialized Equipment and Do Not Satisfy the Machine-or-Transformation Test

Plaintiff then argues that the claims' recitation of "specialized equipment" such as a "dispatch" and a "mobile unit that includes a GPS receiver, cellular telephone, display, and speaker" improves on existing vehicle navigation systems and "amounts to something significantly more than merely determining an expected time of arrival." (D.I. 318 at 17).

The hardware that is employed in the asserted claims is all conventional equipment. For example, Plaintiff's claim that the "dispatch" recited in all the asserted claims is specialized equipment is contradicted by the '377 patent itself:



'377 patent, Figure 6.

Nowhere does the '377 patent disclose or even suggest that the components of the "dispatch," such as the "modem" or "memory" are anything other than basic computer components. Moreover, Plaintiff has already acknowledged that the central controller of the dispatch is merely a basic component of a computer system. (D.I. 121 at 11) ("One of ordinary skill in the art would understand a 'controller' to represent a basic component of a computer system, and a modem is a component for communication.").

The mobile unit also is not a specialized computer. As Plaintiff acknowledges, the mobile unit includes a mobile positioning receiver (such as a GPS receiver), a cellular communications device (for receiving destination information generated from the dispatch), andin certain asserted claims, a speaker or a display. (D.I. 318 at 10-11).

Plaintiff claims that the recitation of a mobile positioning receiver such as a GPS receiver places a "meaningful limit" on the scope of the claims such that it prohibits a finding that the claims are directed to an abstract idea, citing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d

1319, 1332-33 (Fed. Cir. 2010). (D.I. 318 at 10). Plaintiff's reliance on *SiRF* for this proposition is disingenuous.[2]

In *SiRF*, the patent claims at issue were directed to a GPS receiver itself. *SiRF*, 601 F.3d at 1331. Thus, it is entirely unsurprising that the Federal Circuit would conclude that "the presence of a GPS receiver in the claims places a meaningful limit on the scope of the claims." (*Id.* at 1332-33). This is simply not the case with the '377 patent. The facts of *SiRF* contrast sharply with those here in which GPS is nothing more than one source of information used to calculate expected time of arrival. Unlike the claims in *SiRF*, GPS ***does not*** "place a meaningful limit on the scope of the claims" and ***is not*** "essential to the operation of the claimed methods." Rather, GPS, as the mere source of vehicle position data, is part of an insignificant pre-solution activity (data gathering) that cannot make an abstract idea constitute patentable subject matter.[3]

Nor does the recitation of a cellular telephone network in the asserted claims constitute an inventive concept. Indeed, the "Background of the Invention" section of the '377 patent acknowledges that people had been calculating expected times of arrival and reported such times through a cellular network well before the filing of the patent. '377 patent, col. 1, lines 23-31 ("For example, a cellular telephone in a vehicle or carried by a person offers a convenient communication link to report expected time of arrival information.").

Plaintiff also apparently argues that the use of a speaker or a display in certain asserted claims also provides sufficient structure to confer patent eligibility. (D.I. 318 at 10-11). Yet,

---

[2] Plaintiff also cites two hypothetical patent claims from a USPTO document that are modeled after the technology in *SiRF*. (D.I. 319-1 at 10). Thus, the USPTO document is similarly inapplicable here.

[3] *See, e.g.*, *Mayo*, 132 S. Ct. at 1294 and 1299 (2012) (adding "insignificant postsolution activity" or "conventional or obvious pre-solution activity" insufficient to render claims patent-eligible); *Bancorp Servs., LLC v. Sun Life Assur. Co.*, 771 F. Supp. 2d 1054, 1065 (E.D. Mo. 2011) ("[S]toring, retrieving, and providing data . . . are inconsequential data gathering and insignificant post solution activity.").

Plaintiff entirely ignores the argument and case law on pages 13-15 of Defendants' opening brief that establish that audibly communicating information or displaying information on a screen constitutes well-understood, routine, conventional computer activity that does not transform the abstract idea of determining an expected time of arrival into a patent-eligible invention.[4]

"[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. A claimed computer may make the application of an idea faster or more efficient, but that does not make the claims patent-eligible. *Bancorp Servs., LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assoc., Inc.*, 76 F. Supp. 3d 513, 523 (D. Del. 2014) ("The computer components are being employed for basic functions, including storage, transmitting and receiving information, and, the court concludes that such components are not 'specific' or 'special purpose' computers. While the computer components do allow the abstract ideas to be performed more quickly, this does not impose a meaningful limit on the scope of the claim."). Thus, the inclusion of well-known, simple components like "dispatch," "mobile unit," "GPS receiver," or "cellular network" in the claim language is wholly insufficient to elevate the abstract idea of determining the expected time of arrival into a patent-eligible invention.

For similar reasons, the '377 patent also fails to satisfy the machine-or-transformation test. Under the machine-or-transformation test, a claimed process can be patent-eligible under

---

[4] *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (insufficient for claims to "merely recite well-understood, routine, conventional activities, either by requiring conventional computer activities or routine data-gathering steps") (internal quotation omitted); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-cv-1771-RGA, 2015 WL 1387815, at *4 (D. Del. Mar. 25, 2015) (displaying an image is a basic computer function that adds nothing of practical significance to an abstract idea).

Section 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *See Bilski*, 130 S. Ct. at 3225-26. Satisfaction of the machine-or-transformation test is not dispositive of Section 101 eligibility, but it can provide a "useful clue" in applying the *Alice* framework. *Bancorp*, 687 F.3d at 1278.

Plaintiff contends that the asserted claims satisfy the "machine" prong of the machine-or-transformation test because the claims employ a "dispatch" and a "mobile unit." (D.I. 318 at 19-20). However, recitation of general purpose computer equipment, such as that employed in the asserted claims, does not constitute a particular machine or apparatus for purposes of the machine-or-transformation test. *Ultramercial*, 772 F.3d at 716 (general purpose computer fails to satisfy the "machine" prong of the test); *Joao Bock*, 76 F. Supp. 3d at 523 & n.7 (receivers, transmitters, communications devices, data entry devices, input devices, network computers, and central transaction processing computers fail to satisfy the "machine" prong of the machine-or-transformation test). Accordingly, the machine-or-transformation test is not satisfied here.

### C. The *Wireless Media* and *MacroPoint* Cases are Persuasive

Defendants cited two cases involving location-based patents whose claims were found to be directed to an abstract idea. *See Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-cv-7004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015); *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118 (D. Ohio Nov. 6, 2015). Plaintiff makes a feeble attempt to distinguish *Wireless Media*, and no attempt at all to distinguish *MacroPoint*.

*Wireless Media* involved patent claims directed to the "abstract idea of monitoring the location and load status of containers in a yard." *Wireless Media*, 2015 WL 1810378, at *8. Plaintiff claims that it is inapplicable because "the only apparatus in the claims was a generic computer that helped monitor the location of the packages." (D.I. 318 at 14). Yet, Plaintiff does not fully articulate why *Wireless Media* is not pertinent here. The asserted claims of the '377

patent are directed to the abstract idea of determining an expected time of arrival, just as the *Wireless Media* patent claims were directed to the "abstract idea of monitoring the location and load status of containers in a yard." *Wireless Media*, 2015 WL 1810378, at *8. Plaintiff states that the computer that helped monitor the location of the packages in *Wireless Media* was a generic computer. (D.I. 318 at 14). Plaintiff's similar reliance on conventional computer hardware for determining an expected time of arrival should also doom the '377 patent.

As for *MacroPoint*, Plaintiff states that "Defendants' reliance on . . . *Macropoint* is misplaced" (D.I. 318 at 14), yet it fails to mention the case again even once – and for good reason. In *MacroPoint*, the patent-in-suit was directed to "tracking freight, including monitoring, locating, and communicating regarding the location of the freight," which the court found to be an abstract idea. *MacroPoint*, 2015 WL 6870118, at *3. Like the '377 patent, the *MacroPoint* claims were implemented with a general computer, remote from a vehicle, and involved the use of vehicle location information and transmission of information through wireless communications devices. *Id.* at *1-2. The *MacroPoint* court concluded that using general computers and conventional devices to apply the abstract idea of tracking freight was insufficient to confer patent-eligibility. *Id.* at *5-6. This Court should reach the same conclusion.

> **D. The Resemblance of the '377 Patent Claims to Routine Human Activity Confirms That the '377 Patent is Directed to Ineligible Subject Matter**

In their opening brief, Defendants presented a number of examples of humans engaging in the basic concept of determining an expected time of arrival. (D.I. 312 at 7-8). In one particular example, a scenario was presented where a taxi driver is dispatched to pick up Billy from his apartment and take him to the airport. (D.I. 312 at 9). Plaintiff argues that the claims are not directed to an abstract idea because humans cannot determine an expected time of arrival

"as claimed," and criticizes these examples as "flippant" and "irrelevant" and for supposedly failing to address the "dispatch," "mobile unit," or "GPS receiver." (D.I. 318 at 12-14).

This argument entirely misses the mark. These examples were presented not to show that a human determines an expected time of arrival in the exact same fashion as the conventional computer equipment recited in the claims. What these examples do show is that the basic concept behind all the asserted claims – determining an expected time of arrival – is a routine human activity and therefore an abstract idea. To be sure, a GPS receiver can obtain its location with more precision than a human can, and a computer may be able to calculate an expected time of arrival more quickly than a human, but simply taking a conventional human activity and saying "do it on a computer" does not make it patent-eligible. *See Mayo*, 132 S. Ct. at 1294 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use . . . to a particular technological environment or adding insignificant postsolution activity") (internal quotation omitted); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas."). Indeed, in *Cybersource*, the Federal Circuit ruled that a claim's requirement that the method be performed by a computer executing program instructions stored on a computer readable medium ***could not*** save the claims. *Id.* at 1376. And as for Plaintiff's claim that humans lack the ability to account for the changing position of a vehicle during a trip and update their expected time of arrival accordingly (D.I. 318 at 12-13), any person who has ever been stuck in traffic would surely attest otherwise.

## II. CONCLUSION

For the foregoing reasons, and for the reasons stated in their opening brief, Defendants respectfully request that this Court enter judgment on the pleadings that the asserted claims of the '377 patent are invalid as being drawn to unpatentable subject matter.

| | ASHBY & GEDDES |
|---|---|
| *Of Counsel:* | */s/ Tiffany Geyer Lydon* |
| | _____ |
| Edward A. Pennington | John G. Day (#2403) |
| Siddhesh V. Pandit | Tiffany Geyer Lydon (#3950) |
| John P. Moy | Andrew C. Mayo (#5207) |
| Sean T. C. Phelan | 500 Delaware Avenue, 8th Floor |
| John P. Pennington | P.O. Box 1150 |
| Jennifer L. Feldman | Wilmington, DE 19899 |
| SMITH, GAMBRELL & RUSSELL, LLP | (302) 654-1888 |
| 1055 Thomas Jefferson St. NW, Suite 400 | jday@ashby-geddes.com |
| Washington, D.C. 20007 | tlydon@ashby-geddes.com |
| (202) 263-4300 | amayo@ashby-geddes.com |
| epennington@sgrlaw.com | |
| spandit@sgrlaw.com | *Attorneys for Defendants* |
| jmoy@sgrlaw.com | *TeleCommunication Systems, Inc.,* |
| sphelan@sgrlaw.com | *Networks In Motion, Inc., and* |
| jpennington@sgrlaw.com | *Cellco Partnership* |
| jfeldman@sgrlaw.com | |

Dated: January 28, 2016