IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEHICLE IP, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 09-1007 LPS-CJB |
| AT&T MOBILITY LLC, CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC., TELECOMMUNICATION SYSTEMS, INC. and TELENAV INC., | REDACTED VERSION |
| Defendants. | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS COMBINED MOTION FOR PARTIAL SUMMARY JUDGEMENT OF INFRINGEMENT AND MOTION TO <u>EXCLUDE TESTIMONY BASED ON THE WRONG CLAIM CONSTRUCTIONS</u>**

Dated: June 23, 2016

**FISH & RICHARDSON P.C.**
Martina Tyreus Hufnal (#4771)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899-1114
Tel: (302) 778-8407
Hufnal@fr.com

Michael J. Kane
William R. Woodford
Jason M. Zucchi
Phillip Goter
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Kane@fr.com; Woodford@fr.com;
Zucchi@fr.com; Goter@fr.com

Juanita Brooks
Geoff D. Biegler
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4357
Brooks@fr.com; Biegler@fr.com

*Attorneys for Plaintiff*
*VEHICLE IP, LLC*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II.   SUMMARY OF THE ARGUMENT .................................................. 1

III.  CONCISE STATEMENT OF FACTS ............................................... 2

     A.   The '377 Patent ......................................................... 2

     B.   Defendants' Accused Products .................................... 4

     C.   The Requirements Added by Defendants' Experts to "Dispatch" ............. 5

IV.  SUMMARY JUDGEMENT STANDARD ........................................... 7

V.   THE ASSERTED CLAIMS ....................................................... 7

VI.  INFRINGEMENT BY DEFENDANTS' ACCUSED PRODUCTS ................... 8

     A.   The TeleNav Defendants Made, Used, and Sold Mobile Units that Infringed Claims 15-17, 19, and 21 as a Matter of Law. ................... 8

           1.   The TeleNav accused products satisfy the "dispatch" limitation. 10

           2.   The evidence confirms TeleNav's admission that the remaining claim limitations are satisfied. ................................... 13

     B.   The TCS Defendants Made, Used, and Sold Mobile Units that Infringed Claims 15-17, 19, and 21 as a Matter of Law. ....................... 16

           1.   The TCS Accused Products are "an apparatus on a vehicle for determining an expected time of arrival of the vehicle." ............. 17

           2.   The TCS Accused Products include "a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points." .... 18

           3.   The TCS Accused Products include "a positioning device operable to determine a vehicle position." .................................. 21

           4.   Dr. Franz wrongly maintains that "expected time of arrival" requires a "time of day" format. ................................. 22

5.	There is no dispute that the elements of the dependent claims are satisfied by the TCS Accused Products. ................................ 23

C.	Defendants Experts Improperly Add Requirements to the Court's "Dispatch" Construction. ........................................................................24

VII.	MR. ANDREWS AND DR. FRANZ'S TESTIMONY CONCERNING DEFENDANTS' NONINFRINGEMENT OF THE "DISPATCH" LIMITATION IS UNHELPFUL AND UNRELIABLE. ....................................28

VIII.	CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................7

*Cataline Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)................................................................................18

*Cook Inc. v. Endologix, Inc.*,
No. 09-01248, 2012 WL 3886204 (S.D. Ind. Sept. 6, 2012).................................28

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)..............................................................................28

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
No. 98-2364, 2003 WL 1610781 (D. Minn. Mar. 8, 2003) ...................................28

*Hochstein v. Microsoft Corp.*,
No., 07-00451, 2009 WL 2022815 (E.D. Mich. Jul. 7, 2009) ...............................28

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
No. 02-03378, 2007 WL 878519 (N.D. Cal. Mar. 21, 2007) .................................28

*MPT, Inc. v. Marathon Labels, Inc.*,
No. 04-02357, 2006 WL 1644441 (N.D. Ohio Jun. 13, 2006) ...............................29

*Personalized User Model, L.L.P. v. Google Inc.*,
No. 09-525-LPS (D. Del. Feb. 27, 2014) (Ex. 68)..................................................28

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
No. 03-05669, 2007 WL 2429412 (N.D. Cal. Aug. 23, 2007) ...............................29

*Saffran v. Johnson & Johnson*,
2011 WL 197871 (E.D. Tex. Jan. 20, 2011)...........................................................28

*SRI Int'l v. Matsushita Elec. Corp.*,
775 F.2d 1107 (Fed. Cir. 1985)................................................................................7

# I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this infringement action against Defendants in 2009.[1] In late 2011, the Court construed several terms in the '377 patent claims.[2] The Defendants filed summary judgment motions based on those constructions, which the Court granted in early 2013.[3] In late 2014, the Federal Circuit reversed the construction of two terms, vacated the judgment of noninfringement, and remanded the case for further proceedings. In December 2015, Plaintiff narrowed the case by electing 15 asserted claims.[4] Both fact and expert discovery are complete. The hearing on summary judgment and *Daubert* motions is scheduled for September 7, 2016.[5]

# II. SUMMARY OF THE ARGUMENT

Throughout this case, Defendants' approach to infringement has been to identify features in their products and then ask the Court to exclude those features from the claims by pointing to some non-limiting phrase or figure in the '377 patent. Defendants' experts continue this strategy by adding unsupported requirements to the Court's construction of "dispatch" that are contrary to the intrinsic record. The structure, function, and operation of the accused products are not in dispute. When the claim language is applied in a manner consistent with the Court's claim constructions and intrinsic record, Defendants literally infringe at least five of the asserted claims as a matter of law. Accordingly, Plaintiff respectfully requests partial summary judgment of infringement to focus the trial on the disputes that present a genuine fact issue for the jury.

Moreover, because Defendants' expert testimony is inconsistent with the Court's claim constructions and the intrinsic record, it should be excluded as unreliable and unhelpful to the

---

[1] D.I. 1.
[2] D.I. 168.
[3] D.I. 241.
[4] D.I. 306.
[5] D.I. 258.

finder of fact.  Any finding of noninfringement based on these improper opinions would be erroneous as a matter of law.  Accordingly, Plaintiff also respectfully requests that the Court grant its motion to exclude this improper testimony.

## III.    CONCISE STATEMENT OF FACTS

### A.    The '377 Patent

The inventions described and claimed in the '377 patent were developed in the 1990s by a group of inventors at a publicly-traded company called HighwayMaster.  HighwayMaster developed award-winning mobile communications technology for the vehicle management industry, and obtained more than forty U.S. patents that covered its technology.  The '377 patent, titled "Method and Apparatus for Determining Expected Time of Arrival," issued on November 16, 1999 and stems from an application filed February 10, 1995 that issued as U. S. Patent No. 5,724,243.  Only the '377 patent is asserted in this matter.

The '377 patent discloses systems and methods for determining an expected time of arrival of a vehicle at a way point that overcame the flaws of existing systems.[6]  The '377 patent discloses a central platform (called a "dispatch" in the patent) that, among other things, processes navigation information (called "destination information") and communicates that information to mobile devices in vehicles via, for example, the cellular telephone network.[7]

In this system, the process of determining an expected time of arrival begins with the dispatch generating destination information.[8]  The destination information may include

---

[6] Ex. 1 at 1:15-42.  Unless otherwise noted, all cites to exhibits are to the exhibits attached to the Declaration of Jason M. Zucchi in Support of Plaintiffs' Combined Motion for Partial Summary Judgement of Infringement and Motion to Exclude Expert Testimony Based on the Wrong Claim Constructions, filed herewith.
[7] Ex. 1 at 2:66-3:12.
[8] Ex. 1 at 2:66-3:7, 4:56-59.

destinations, route information, traffic and weather information, and the like.[9]  A mobile unit in a vehicle receives the destination information, determines the vehicle's current position, and determines an expected time of arrival for a particular way point.[10]  According to the patent, the dispatch "generates" the destination information for eventual transmission to the mobile unit.[11]  As shown in Figure 6, which is a schematic representation of the dispatch, destination information can also be input through a variety of input devices, such as a memory, a keyboard, or any other suitable means to input information.[12]  In other embodiments, a destination may be input into the mobile device before the trip, provided to the dispatch by a human operator, or requested by the operator of the vehicle.[13]

The mobile unit receives the destination information from the dispatch and determines the vehicle position.[14]  In response to the vehicle position, the mobile unit determines the expected time of arrival at a particular way point.[15]  The mobile unit can provide a more accurate expected time of arrival through the use of "way points."  In the Figure 2 example, the mobile unit uses GPS technology to determine the vehicle's position along the route.[16]  As the driver navigates the route, the mobile unit can assist the driver by providing audible information regarding an upcoming way point and also display the way points on a map.[17]

---

[9] Ex. 1 at 3:1-7.
[10] Ex. 1 at 1:62-65, 5:5-16 & 5:53-6:7.
[11] Ex. 1 at 1:62-65, 5:5-16 & 5:53-6:7.
[12] Ex. 1 at 12:40-59.
[13] Ex. 1 at 11:53-12:5.
[14] Ex. 1 at 1:62-65, 5:5-16, 5:53-6:7.
[15] Ex. 1 at 1:62-65, 5:5-16, 5:53-6:7.
[16] Ex. 1 at 5:17-52.
[17] Ex. 1 at 11:38-45.

### B. Defendants' Accused Products



---

[18] The TeleNav Accused Products are identified in the Stipulation re Representative Versions of Accused TeleNav Products (D.I. 289).
[19] D.I. 185 at ¶¶ 4, 9-10.
[20] D.I. 185 at ¶¶ 4, 9-10.
[21] D.I. 289; Ex. 2.
[22] D.I. 295; Ex. 3.
[23] The TCS Accused Products are identified in the Stipulation re Representative Versions of Accused TCS/NIM Products (D.I. 297).
[24] D.I. 181 at ¶ 13.
[25] D.I. 181 at ¶ 13.
[26] D.I. 297

## C.     The Requirements Added by Defendants' Experts to "Dispatch"

The "dispatch" limitation was one of three disputed terms during the claim construction process.[27]  The Court ultimately construed "dispatch" to be a "computer-based communication and processing system remotely located from the vehicle that ***manages*** and ***monitors*** vehicles."[28]



---

[27] D.I. 167 at 11-13.
[28] D.I. 167 at 11 (emphasis added).
[29] Ex. 4, ¶¶ 46, 83-122; Ex. 5, ¶¶ 116-264; *see also* Ex. 14 at 59:9-98:6; Ex. 30 at 46:9-65:8, 105:25-117:13.
[30] Ex. 4, ¶¶ 46, 84.
[31] Ex. 4, ¶ 88.
[32] Ex. 4, ¶ 84.
[33] Ex. 30 at 115:4-9.
[34] Ex. 4, ¶ 117.



[35] Ex. 5, ¶ 121.

[36] Ex. 5, ¶ 160.

[37] Ex. 14 at 97:20-98:6.

[38] Ex. 4, ¶¶ 46, 83-122; Ex. 5, ¶¶ 116-264; *see also* Ex. 14 at 98:15-124:25; Ex. 30 at 83:9-89:14, 105:25-117:13, 141:9-160:5, 209-210

[39] Ex. 5, ¶¶ 117, 122, 129-132, 160, 199, 214.

[40] Ex. 14 at 110:6-17.

[41] Ex. 4, ¶¶ 46.

[42] Ex. 4, ¶ 80, 95

[REDACTED]

## IV. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate where, when the facts are viewed in the light most favorable to the non-movant, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Mere denials or conclusory statements do not create genuine disputes of material fact. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

## V. THE ASSERTED CLAIMS

In December 2015, Plaintiff narrowed the case by electing 15 asserted claims.[46] Plaintiff's motion for summary judgment focuses on five of these claims that relate to the mobile unit (15-17, 19, and 21). The mobile unit claims depend from claim 12, and are directed to an apparatus on a vehicle for determining an expected time of arrival of the vehicle:[47]

> Claim 12. An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:
> a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;
> a positioning device operable to determine a vehicle position; and
> a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the

---

[43] Ex. 30 at 156:18-157:12.
[44] Ex. 30 at 209:17-210:15
[45] Ex. 4, ¶¶ 46, 83-122; Ex. 5, ¶¶ 116-264
[46] D.I. 306.
[47] Ex. 1 at 15:48-16:24.

vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the communications device comprises a cellular telephone.

Claim 15. The apparatus of claim 12, wherein the destination information further comprises an expected travel speed along a predetermined route specified by the way points, the processor further operable to determine the expected time of arrival of the vehicle in response to the expected travel speed.

Claim 16. The apparatus of claim 12, wherein the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points, the processor further operable to determine the expected time of arrival of the vehicle in response to the traffic or weather information.

Claim 17. The apparatus of claim 12, wherein the positioning device comprises a GPS receiver.

Claim 18. The apparatus of claim 12, wherein the processor selects a next way point if the vehicle reaches a present way point.

Claim 19. The apparatus of claim 18, further comprising a speaker to communicate audibly information regarding the next way point.

Claim 21. The apparatus of claim 12, further comprising a display to display the way points on a map.

Claim construction is often dispositive of infringement where, as here, there is no material dispute over the operation of the accused products. The only real dispute relates to the unsupported requirements added by Defendants' experts to the term "dispatch."

## VI. INFRINGEMENT BY DEFENDANTS' ACCUSED PRODUCTS

### A. The TeleNav Defendants Made, Used, and Sold Mobile Units that Infringed Claims 15-17, 19, and 21 as a Matter of Law.

TeleNav and AT&T literally infringed claims 15-17, 19, and 21 as a matter of law by making mobile units (cellular telephones running the accused mobile applications) that satisfy each claim element.[48] ███████████████████████████████

---

[48] In addition to the documentary evidence advanced by Plaintiff to support its motion, Plaintiff also submits a declaration of its expert, Dr. Steven Goldberg. As set forth in his declaration, it is



---

Dr. Goldberg's opinion that TeleNav and AT&T infringe apparatus claims 15-17, 19, and 21 of the '377 patent (Ex. 7 at ¶¶ 4-5).

[49] Ex. 8 at 84:8-23, 85:3-10, 85:24-86:20; Ex. 9 at 58:3-11; 154:20-155:5; Ex. 10 at 214:6-18; Ex. 11 at TN003004.

[50] Ex. 12 at 41:20-43:3; Ex. 10 at 207:9-208:2, 215:4-218:23; Ex. 11 at TN003007; Ex. 13 at 28:12-24; Ex. 8 at 115:2-19.

[51] Ex. 9 at 58:3-11; 154:20-155:5.

[52] Ex. 14 at 146:13-21.

[53] Ex. 14 at 54-55.

### 1. The TeleNav accused products satisfy the "dispatch" limitation.

The Court construed "dispatch" to be a "computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles."[54]  The TeleNav Defendants do not dispute that their accused servers comprise "a computer-based communication and processing system remotely located from the vehicle."  The dispute centers on whether their servers "manage" and "monitor" vehicles as required by the Court's claim construction.

The TeleNav Servers satisfy the "dispatch" limitation.[55]



---

[54] D.I. 167 at 11.
[55] Ex. 7 at ¶¶ 67-112.
[56] Ex. 12 at 114:14-117:5.
[57] Ex. 21 at 49:17-50:3; Ex. 31 at TN000006.
[58] Ex. 32 at 3.
[59] Ex. 23 at 132:2-25, 133:1-13.
[60] Ex. 23 at 128:9-129:23; *see also* Ex. 21 at 165:3-166:2.



[61] Ex 13 at 125:2-126:17.

[62] Ex 23 at 22:6-23:8, *see also* 24:17-25:14, 39:9-17, 49:25-51:1, 93:25-94:17; Ex 35; Ex. 36; Ex. 22 at TN038611-TN038617.

[63] Ex. 13 at 80:24-81:8, 82:7-17, 163:23-171:25; Ex. 24 at 10; Ex. 37 at 79-94; Ex. 12 at 122:14-124:24.

[64] Ex. 13 at 80:24-81:8, 82:7-17, 163:23-171:25; Ex. 24 at 10; Ex. 37 at 79-94; Ex. 12 at 122:14-124:24.

[65] Ex. 13 at 90:15-18, 91:19-92:8; Ex. 24 at 12-13.

[66] Ex. 13 at 121:23-122:4, 178:4-12; Ex. 38 at 64.

[67] Ex. 22 at 120; Ex. 23 at 46:9-17, 48:13-49:3, 58:10-18, 59:20-63:23, 64:9-67:3; Ex. 39; Ex. 41; Ex. 13 at 150:1-155:15; Ex. 40 at 33.

[68] Ex. 24 at 1; Ex. 13 at 85:3-5, 85:25-86:23; Ex. 23 at 89:22-90:17.

[69] Ex. 23 at 33:2-34:9; Ex. 22 at 119-20.

- 

Moreover, TeleNav's Servers "monitor" vehicles by performing the following functions:



70 Ex. 38 at 14-15; Ex. 13 at 175:8-176:8
71 Ex. 38 at 79-80; Ex. 13 at 181:15-182:2, 183:25-184:8.
72 Ex. 32 at 2; Ex. 21 at 47:23-48:9.
73 Ex. 42 at 1; Ex. 8 at 129:14-135:20; *see also* Ex. 23 at 128:9-129:23.
74 Ex. 21 at 165:3-166:2
75 Ex. 13 at 131:22-133:3, 134:4-135:18, 148:20-25; Ex. 37 at 49-52.
76 Ex. 21 at 55:14-57:10; *see also* Ex. 13 at 98:7-22, 99:10-24, 100:1-14; Ex. 24 at 22; Ex. 23 at 39:9-17, 128:9-129:23; Ex. 22 at 120.
77 Ex. 12 at 166:21-170:6; Ex. 43 at TN394791-801; Ex. 13 at 144:3-118, 145:9-147:3; Ex. 37 at 37-38.
78 Ex. 13 at 80:24-81:8, 82:7-17, 85:3-5, 163:23-171:25; Ex. 24 at 10; Ex. 37 at 79-94; Ex. 12 at 122:14-124:24.



**2.** **The evidence confirms TeleNav's admission that the remaining claim limitations are satisfied.**



---

[79] Ex. 13 at 105:4-24, 107:19-108:7, 109:8-111:12, 194:24-195:5; Ex. 44 at 4, 9-16; Ex. 45 at 22-26.

[80] Ex 13 at 156:19-159:19, 167:16-168:13, 200:16-205:22; Ex 37 at 76, 84-85; Ex 46.

[81] Ex 47 at 2; Ex. 13 at 199:18-200:6, 209:17-22, 210:25-215:1.

[82] Ex. 14 at 54-55.

[83] Ex. 21 at 73:15-78:16; 80:16-85:1, 133:23-142:12; *see also* Ex. 7 at ¶¶ 59-60, 127-136.

[84] Ex. 21 at 47:1-54:10, 75:14-77:25; Ex. 12 at 35:17-21, 149:22-150:15, 245:14-21; Ex. 15, ¶¶61-62, 106-131.

[85] Ex. 21 at 47:1-54:10.

[86] Ex. 22 at 120; Ex. 23 at 46:9-17, 48:13-49:3, 58:10-18, 59:20-63:23, 64:9-67:3, 89:22-90:17; Ex. 24 at 12-13; Ex. 13 at 85:25-86:23, 90:15-92:8, 125:24-126:17; Ex. 12 at 135:11-22.



---

[87] Ex. 21 at 59:21-64:3; Ex. 23 at 83:11-85:8, 92:22-93:14; *see also* Ex. 7 at ¶113-125.
[88] Ex. 12 at 159:3-15.
[89] *See* Ex. 12 at 35:17-21, 245:14-21.
[90] Ex. 21 at 47:1-54:10; Ex. 8 at 129:22-130:14.
[91] Ex. 21 at 75:14-78:16; Ex. 12 at 149:22-150:15.
[92] Ex. 21 at 74:25-77:19; Ex. 23 at 115:16-118:22, 119:1-17; *see also* Ex. 7 at ¶117, 138-140.
[93] Ex. 23 at 115:16-118:22, 119:1-17.



---

[94] Ex. 21 at 86:3-23; *see also* Ex. 7 at ¶141-144.

[95] Ex. 21 at 86:3-23.

[96] Ex. 21 at 86:3-23.

[97] Ex. 12 at 159:3-15; *see also* Ex. 7 at ¶ 145.

[98] Ex. 21 at 75:14-23.

[99] Ex. 12 at 47:6-48:25; *see also* Ex. 7 at ¶ 147-148.

[100] Ex. 67 at VIP-ETA0085951.

[101] Ex. 67 at VIP-ETA0085945; Ex. 31 at TN000006; *see also* Ex. 7 at ¶ 149.

## B. The TCS Defendants Made, Used, and Sold Mobile Units that Infringed Claims 15-17, 19, and 21 as a Matter of Law.

TCS/NIM and Verizon literally infringed claims 15-17, 19, and 21 as a matter of law by making mobile units (cellular telephones running the accused mobile applications) that satisfy each claim element.[102]



---

[102] In addition to the documentary evidence advanced by Plaintiff to support its motion, Plaintiff also submits a declaration of its expert Dr. Steven Goldberg. As set forth in the declaration, it is Dr. Goldberg's opinion that TCS/NIM and Verizon infringe apparatus claims 15-17, 19, and 21 of the '377 patent (Ex. 15 at ¶¶ 4-5).

[103] Ex. 16 at 50:24-51:12; Ex. 17 at 71:13-73:4, 73:21-74:1, 74:9-74:24; Ex. 18 at 87:20-89:10, 91:20-94:12; D.I. 297.

[104] Ex. 18 at 87:20-89:6, 94:16-95:17.

[105] Ex. 16 at 44:11-16, 46:2-15, 47:15-48:3, 49:6-49:23, 50:24-51:12, 52:7-15, 52:22-53:15, 75:11-77:4; Ex. 20.

[106] Ex. 16 at 50:24-51:12.

 For these reasons, Plaintiff respectfully
requests that its motion for partial summary judgment of infringement also be granted as to
claims 15-17, 19, and 21 for the TCS Accused Products.

### 1. The TCS Accused Products are "an apparatus on a vehicle for determining an expected time of arrival of the vehicle."

The TCS Defendants do not appear to dispute that the TCS Accused Products are an
apparatus for determining an expected time of arrival. They also do not dispute the Accused
TCS Products are taken on vehicles for determining an expected time of arrival of the vehicles.

The "vehicle" term first appears in the preamble of claim 12, is
only a limitation if it recites essential structure or steps, or if it is necessary to give life, meaning,

---

[107] Ex. 30 at 34:23-35:11.
[108] *See, e.g.* Ex. 4, ¶¶ 113, 124-127, 140-149, and 182-206.
[109] Ex. 15 at ¶ 66.
[110] Ex. 15 at ¶ 175.
[111] Ex. 15 at ¶ 175.
[112] Ex. 4, ¶¶ 128-132, 183.

and vitality to the claim.  *Cataline Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808

(Fed. Cir. 2002).  A preamble is not limiting where a patentee defines a structurally complete

invention in the claim body and uses the preamble only to state a purpose or the intended use for

the invention.  *Id.*  The "vehicle" term is not a limitation here because claim 12 recites a

structurally complete invention in the claim body and "vehicle" is merely used to state the

intended use of the invention rather than to recite essential structure.  But even if it were a

limitation, the TCS Defendants cannot seriously dispute that the TCS mobile units are intended

to be carried on vehicles because ███████████████████████████████████████████████ ███

███████████████████████████████████████████████████████████████████████████

███████████████████ ██ ██████████████████████████████████████████████████ █

███████████████████████████████████████████████████████████████ ██

> **2.** **The TCS Accused Products include "a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points."**

The accused TCS Defendants' mobile units include a communications device operable to

receive destination information from the TCS servers.[116] ████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████ ██ ███████████████████████████████████████████████████████

████████████████████████████████████████████ ███ ████████████████████████

███████████████████████████████████████████████████████████████████████████

---

[113] Ex. 18 at 150:17-151:14.
[114] Ex. 18 at 150:17-151:14; *see also* Ex. 15 at ¶ 181.
[115] Ex. 18 at 103:25-105:9.
[116] Ex. 25 at 114:25-117:3; Ex. 26 at 56.
[117] Ex. 25 at 269:17-24, 270:9-11, 283:2-284:8, 287:16-288:14; Ex. 16 at 98:17-99:4.
[118] Ex. 27 at 95:6-97:8, 153:16-154:15; Ex. 28 at 15, 25-26; Ex. 29 at 47-48, 179-80; *see also* Ex. 15 at ¶ 77, 101-102.



The TCS Servers also satisfy the "dispatch" limitation.[120]

---

[119] Ex. 30 at 33:10-35:11; Ex. 4, ¶ 126; *see also* Ex. 15 at ¶ 175.

[120] *See* Ex. 15 at ¶¶ 68-97

[121] Ex. 25 at 111:19-114:24; Ex. 3 at 52-57; Ex 16 at 81:4-83:6; Ex. 48 at 8, 59; Ex. 49 at TCS0006453; Ex. 50 at TCS0007658; Ex. 51 at TCS0000296; Ex. 52 at TCS0010454.

[122] Ex. 25 at 103:6-111:10, 290:13-298:7; Ex. 26 at 55; Ex. 53 at TCS0625989-94.

[123] Ex. 18 at 148:21-149:10; Ex. 16 at 74:16-75:8; Ex. 51 at TCS0000298; Ex. 54 at TCS001465.

[124] Ex. 25 at 160:14-16, 160:17-163:5, 200:1-201:23, 234:5-8, 283:2-284:8; Ex. 55 at 9; Ex. 16 at 84:1-13, 102:10-103:12; Ex. 56; Ex. 18 at 77:24-78:7.

[125] Ex. 18 at 77:24-78:7.

[126] Ex. 25 at 270:9-11, 287:16-288:14.



Moreover, The TCS Servers "monitor" vehicles by performing the following functions:



---

[127] Ex. 25 at 268:16-269:24; Ex. 57 at 39; Ex. 16 at 98:17-99:4.

[128] Ex. 25 at 285:19-286:17; Ex. 27 at 100:4-105:6.

[129] Ex. 25 at 103:16-104:16, 247:7-248:16; Ex. 48 at 8.

[130] Ex. 58 at TCS-NIM_01483; Ex. 59 at TCS-NIM_01174; Ex. 17 at 81:19-92:11, 92:20-95:1.

[131] Ex. 25 at 99:9-25; Ex. 3 at 52-57.

[132] Ex. 25 at 180:1-21 191:11-16, 198:3-9; Ex. 18 at 148:21-149:10.

[133] Ex. 25 at 133:7-136:17, 179:22-181:15; 181:23-182:9, 195:10-199:11; Ex. 60 at 36.

[134] Ex. 25 at 158:15-159:8, 169:10-170:11, 174:21-24, 179:22-181:15; Ex. 61 at 29; Ex. 60 at 10, 12, 23; Ex. 16 at 145:7-146:1; Ex. 62 at 3.



- 

- 

- 

- 

**3.** **The TCS Accused Products include "a positioning device operable to determine a vehicle position."**

---

[135] Ex. 55 at 7, 10-11; Ex. 25 at 190:11-194:20, 196:4-10, 198:18-199:22, 200:1-201:23, 300:5-301:9.
[136] Ex. 25 at 210:1-4, 211:8-218:5.
[137] Ex. 55 at 16; Ex. 48 at 8; Ex. 25 at 204:7-205:13, 229:8-235:21, 248:21-249:21; Ex. 18 at 148:21-149:10; Ex. 17 at 177:18-22, 181:15-17; *see* Ex. 63 at TCS0047942.
[138] Ex. 17 at 97:18-100:8; Ex. 18 at 83:17-84:7; Ex. 58.
[139] Ex. 25 at 191:5-193:8.
[140] Ex. 4, ¶ 126; *see also* Ex. 15 at ¶ 175.

#### 4. Dr. Franz wrongly maintains that "expected time of arrival" requires a "time of day" format.

Claim 12 requires "a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the device comprises a cellular telephone." The phrase "expected time of arrival" has been heavily litigated. The Federal Circuit ultimately concluded that the term did not exclude a remaining travel time format and construed the term to be a "time of day at which the vehicle is expected to arrive somewhere."[141]

Nevertheless, for the subset of TCS Accused Products that "display a remaining travel time at a destination" (Group 2 Builds),[142] Dr. Franz wrongly contends there is no infringement because the construction adopted by the Federal Circuit requires that expected time of arrival be in a time of day format, and not a remaining travel time.[143] He apparently adopted this view on his own reading of the Federal Circuit's opinion.[144] Dr. Franz's opinion is contrary to law. It is also contrary to the view of the TCS Defendants' validity expert, who views the remaining travel time to be within the literal scope of the court's claim construction of "expected time of arrival."[145]

████████████████████████████████████

████████████████████████████████████████

---

[141] 594 Fed. Appx. at 640-42.
[142] D.I. 297.
[143] Ex. 4, ¶ 133.
[144] Ex. 30 at 44:4-45:20
[145] Ex. 6 at 98:12-16.

**5.** **There is no dispute that the elements of the dependent claims are satisfied by the TCS Accused Products.**

---

[146] Ex. 25 at 99:9-25; *see also* D.I. 297 at 2-6.
[147] Ex. 25 at 195:2-19.
[148] Ex. 25 at 131:9-132:23.
[149] Ex. 30 at 33:10-35:11.
[150] Ex. 25 at 134:3-135:22; Ex. 53 at TCS0626125-26
[151] Ex. 25 at 135:16-136:1; Ex. 53 at TCS0625989-91, TCS0625947; *see also* Ex. 15 at ¶106-131, 137.
[152] Ex. 3 at 53-57.
[153] Ex. 25 at 133:7-136:17, 153:17-155:5, 169:10-170:21; Ex. 53 at TCS0625990, TCS0625947.
[154] D.I. 297 at 2-6.



C.   **Defendants Experts Improperly Add Requirements to the Court's "Dispatch" Construction.**

Defendants' experts have added several extraneous and result-oriented requirements into

the Court's construction of "dispatch." For example, nothing in the Court's construction requires

the dispatch to initiate and control all destinations sent to vehicles, or requires drivers to comply

---

[155] Ex. 25 at 56:14-58:23, 135:24-136:17; *see also* Ex. 15 at ¶ 138-141.
[156] Ex. 65 at CPG0455818-19; *see also* Ex. 15 at ¶ 142.
[157] Ex. 25 at 123:22-124:10.
[158] Ex. 25 at 121:23-126:15; Ex. 66 at CPG0238154; Ex. 65 at CPG0455821-22; Ex. 15 at ¶ 143-144
[159] Ex. 25 at 194:21-24.
[160] Ex. 25 at 126:16-130:20.
[161] Ex. 25 at 127:19-128:9, 129:7-130:8; *see also* Ex. 15 at ¶ 145.

with those instructions.[162]  Similarly, the Court's construction does not require the frequent (or

continuous), systematic, or active monitoring of vehicle locations by the dispatch.[163]  But

Defendants' experts rely entirely on these requirements (as they must) to avoid infringement.

These opinions are not supported by the Court's constructions and contradict the intrinsic record.

     The Court's claim construction and the '377 patent do not require that the dispatch

"manage" vehicles by initiating and controlling destinations sent to them.  The term "control"

only appears twice in the '377 patent, and those passages do not require that the dispatch

"initiate" and "control" destinations sent to vehicles.[164]  Instead, the dispatch "manages" vehicles

by sending destination information to them.[165]  Moreover, the dispatch alone cannot "initiate"

and "control" destinations sent to mobile units in vehicles.  The claimed dispatch—being a

computer-based communication and processing system—manages vehicles based on inputs it

receives from human operators (such as dispatchers), drivers, or other sources and then generates

destination information that it communicates to the mobile unit in a vehicle.[166]  For example,

Defendants' validity expert acknowledged that "dispatch" does not itself "decid[e] which

vehicles get which information," and testified that the dispatch is "just basically doing a

communications relay function."[167]

     These added requirements are also inconsistent with the Court's construction because

they introduce a human component into the claims by requiring a human with authority over the

---

[162] Ex. 4, ¶¶ 46, 83-122; Ex. 5, ¶¶ 116-264; *see also* Ex. 14 at 59:9-98:6; Ex. 30 at 46:9-65:8, 105:25-117:13.

[163] Ex. 4, ¶¶ 46, 83-122; Ex. 5, ¶¶ 116-264; *see also* Ex. 14 at 98:15-124:25; Ex. 30 at 83:9-89:14, 105:25-117:13.

[164] Ex. 1 at 2:66-3:33.

[165] Ex. 1 at 2:66-3:7; Ex. 6 at 101:11-102:15, 106:3-109:10.

[166] Ex. 6 at 101:11-102:15, 106:3-111:3, 114:4-117:5; Ex. 1 at 11:63-12:3, 12:54-59.

[167] Ex. 6 at 115:18-116:8; *see also* Ex. 30 at 68:19-69:14.

driver to initiate and control a destination for the vehicle.[168]  In addition, they incorporate human

intent into their construction of "manages" because "the dispatch manages the vehicles by

sending them specific destination assignments, destinations that they did not request, but are

obligated (as managed entities) to accept and travel to."  Thus, two different dispatches could

have an identical structure and function, yet yield a different result on the issue of infringement

depending on whether the human intent was to control the vehicle to a destination rather than to

simply make a suggestion.

The Court's construction also does not require that "monitoring" *must* include vehicle

locations as argued by Defendants' noninfringement experts.[169]  The '377 patent takes a broad

view of the information that may be monitored by the dispatch.  For example, the dispatch may

monitor the expected times of arrival of vehicles at particular destinations, reporting times,

vehicle positions, information input by the vehicle operator, information collected by various

sensors, and others.[170]  Even the TCS Defendants' validity expert agrees that the court's claim

construction "doesn't look like it requires monitoring the position of the vehicle."[171]

Additionally, the Court's construction does not require that "monitoring" of a vehicle

must be "systematic" or have "temporal regularity or repetition" as argued by Defendants'

noninfringement experts.  The '377 patent touts the advantages of infrequent monitoring, along

with the benefits of various conditions triggering the mobile unit to transmit information to the

dispatch for monitoring.[172]  For example, the '377 patent teaches that the claimed system

---

[168] Ex. 6 at 114:4-117:5.
[169] Ex. 6 at 133:19-23.
[170] Ex. 1 at 6:15-21, 8:46-65, 9:13-32, 10:43-50, 12:6-21; *see also* Ex. 6 at 127:10-23.
[171] Ex. 6 at 133:19-23.
[172] Ex. 1 at 6:18-21.

requires infrequent monitoring (such as at the beginning and end of a trip) and therefore reduces the need for additional personnel, equipment, and communications costs.[173] The mobile unit may be triggered to report information to the dispatch, such as a vehicle being off-route or late, the vehicle's engine having trouble, or a breach of the vehicle's security.[174] The TCS Defendants' validity expert agrees that the Court's "dispatch" construction does not require monitoring vehicles at "specific time interval[s]."[175]

Moreover, the Court's construction does not require active monitoring by the dispatch (i.e., "keep[ing] track of the vehicle location," or "check[ing] in on the client application to see what it is doing, or to determine its location").[176] In fact, the patent provides several examples where the dispatch passively monitors the mobile unit in the vehicle.[177] The patent discloses the mobile unit generating several types of information (late expected time of arrival to a destination, sensor readings, status of the vehicle or vehicle operator, etc.) and transmitting that information without prompting by the dispatch.[178] The '377 patent also teaches that the mobile unit may notify the dispatch when the vehicle has reached a way point, so that the dispatch may be notified that the vehicle is still on the assigned route without needing to send a query to check on the vehicle's progress along the route.[179]

At bottom, Defendants are attempting to do through their experts what they could not convince the Court to do during the claim construction process. Experts are not free to re-define

---

[173] Ex. 1 at 8:8-17.
[174] Ex. 1 at 12:6-21.
[175] Ex. 6 at 130:4-10.
[176] *E.g.*, Ex. 5, ¶¶ 150, 161.
[177] Ex. 1 at 12:6-21.
[178] Ex. 1 at 12:6-21.
[179] Ex. 1 at 9:13-15.

claim terms, especially when those definitions contradict the intrinsic record.  The evidence

demonstrates that the Defendants' servers both manage and monitor vehicles.

## VII. MR. ANDREWS AND DR. FRANZ'S TESTIMONY CONCERNING DEFENDANTS' NONINFRINGEMENT OF THE "DISPATCH" LIMITATION IS UNHELPFUL AND UNRELIABLE.

"Once a district court has construed the relevant claim terms, and unless altered by the

district court, then that legal determination governs for purposes of trial.  No party may

contradict the court's construction to a jury."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

1312, 1321 (Fed. Cir. 2009).  Likewise, parties are not permitted to evade the court's claim

constructions by "construing," "interpreting," or "altering the scope" of the terms in the

construction.  *See e.g., Informatica Corp. v. Bus. Objects Data Integration, Inc.*, No. 02-03378,

2007 WL 878519, at *2 (N.D. Cal. Mar. 21, 2007) (rejecting defendant's contention that both

parties could argue their "interpretation" of the court's claim construction); *EZ Dock, Inc. v.

Schafer Sys., Inc.*, No. 98-2364, 2003 WL 1610781, at *12 (D. Minn. Mar. 8, 2003)

("Furthermore, the parties are not entitled to 'construe' the Court's claim construction . . . .").

To prevent expert witnesses from arguing claim constructions to the jury, district courts

routinely exclude opinions and testimony that rely on "interpretations" that alter the court's

claim construction and preclude the party from offering the excluded opinions and testimony at

trial.  *E.g.*, *Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS (D. Del. Feb. 27,

2014) ("expert testimony inconsistent with the Court's claim construction is unreliable and

unhelpful to the finder of fact") (Ex. 68); *Cook Inc. v. Endologix, Inc.*, No. 09-01248, 2012 WL

3886204, at *3 (S.D. Ind. Sept. 6, 2012) (explaining that defendant "did not succeed with its

argument at claim construction and cannot seek to reargue its point at trial through expert

testimony"); *Saffran v. Johnson & Johnson*, 2011 WL 197871, at *3-4 (E.D. Tex. Jan. 20, 2011)

(excluding expert testimony contrary to court's construction); *Hochstein v. Microsoft Corp.*, No.,

07-00451, 2009 WL 2022815, at *1 (E.D. Mich. Jul. 7, 2009) (excluding testimony set forth in expert report that conflicted with the court's claim construction); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. 03-05669, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) (striking portion of expert report inconsistent with court's claim construction and precluding the testimony from use at trial); *MPT, Inc. v. Marathon Labels, Inc.*, No. 04-02357, 2006 WL 1644441, at *2-3 (N.D. Ohio Jun. 13, 2006) (striking portions of an expert report and precluding testimony inconsistent with the court's claim construction).

Defendants through their experts should not be permitted to evade the Court's claim construction by further construing, interpreting, or altering the scope of terms in its "dispatch" construction (for the reasons explained previously) or by applying a meaning of "expected time of arrival" that was rejected by the Federal Circuit. Any testimony based on these unsupported requirements would be improper, unreliable and legally impermissible because it will confuse the jury and be highly prejudice to Plaintiff. The opinions and corresponding testimony for the term "dispatch" and "expected time of arrival" should thus be excluded.

## VIII. CONCLUSION

For the foregoing reasons, Defendants' Accused Products satisfy every limitation of claims 15-17, 19, and 21. Accordingly, Plaintiff respectfully requests that its motion for summary judgment of infringement as to claims 15-17, 19, and 21 of the '377 patent be granted. Moreover, for the foregoing reasons, Plaintiff respectfully requests that the Court to exclude Defendants' expert testimony of "manages and monitors vehicles" and Dr. Franz's testimony regarding "expected time of arrival" because both experts fail to apply the Court's claim constructions, making their testimony unreliable and unhelpful.

Dated: June 23, 2016           **FISH & RICHARDSON P.C.**

By: */s/ Martina Tyreus Hufnal*
       Martina Tyreus Hufnal (#4771)
       222 Delaware Avenue, 17th Floor
       Wilmington, DE 19899-1114
       Tel: (302) 778-8407
       Hufnal@fr.com

       Michael J. Kane
       William R. Woodford
       Jason M. Zucchi
       Phillip Goter
       3200 RBC Plaza
       60 South Sixth Street
       Minneapolis, MN 55402
       Tel: (612) 335-5070
       Kane@fr.com
       Woodford@fr.com
       Zucchi@fr.com
       Goter@fr.com

       Juanita Brooks
       Geoff D. Biegler
       12390 El Camino Real
       San Diego, CA 92130
       Tel: (858) 678-4357
       Brooks@fr.com
       Biegler@fr.com

      *Attorneys for Plaintiff VEHICLE IP, LLC*