IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEHICLE IP, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 09-1007-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| AT&T MOBILITY LLC, CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC., TELECOMMUNICATION SYSTEMS INC., TELENAV INC., UNITED PARCEL SERVICE INC., and UPS LOGISTICS TECHNOLOGIES INC., | ) ) ) ) ) ) ) | REDACTED: PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TO EXCLUDE CERTAIN OPINION TESTIMONY OF RYAN SULLIVAN, PLAINTIFF'S EXPERT ON DAMAGES**

| | |
|---|---|
| OF COUNSEL:<br>David R. Clonts<br>Manoj S. Gandhi<br>Michael F. Reeder, II<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1111 Louisiana Street, 44th Floor<br>Houston, TX 77002<br>(713) 220-5800<br><br>Steven M. Zager<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1000<br><br>*Attorneys* for *Defendants AT&T Mobility LLC and TeleNav, Inc.* | John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>SHAW KELLER LLP<br>300 Delaware Avenue, Suite 1120<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br><br>*Attorneys* for *Defendants AT&T Mobility LLC and TeleNav, Inc.* |
| OF COUNSEL:<br>John P. Schnurer<br>Kevin J. Patariu<br>Evan S. Day<br>PERKINS COIE LLP<br>11988 El Camino Real, Suite 350<br>San Diego, CA 92130-2594<br>(858) 720-5700<br><br>*Attorneys for Defendants TeleCommunication Systems, Inc., and Networks in Motion, Inc.,* and *Cellco Partnership*<br><br>Floyd B. Chapman<br>Kevin P. Anderson<br>Karin Hessler<br>WILEY REIN LLP<br>1776 K Street, NW<br>Washington, D.C. 20006<br>(202) 719-7000<br><br>Attorneys for Defendant<br>*Cellco Partnership*<br><br>Dated:  June 23, 2016 | John G. Day (No. 2403)<br>Tiffany Geyer Lydon (No. 3950)<br>Andrew C. Mayo (No. 5207)<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>jday@ashby-geddes.com<br>tlydon@ashby-geddes.com<br>amayo@ashby-geddes.com<br><br>Attorneys for Defendants<br>*TeleCommunication Systems, Inc., Networks in Motion, Inc.,* and *Cellco Partnership* |

**TABLE OF CONTENTS**

I.   Summary of The Argument ...................................................................................................1

II.  Nature And Stage of the Proceedings ....................................................................................2

III. Factual Background ...............................................................................................................2

IV.  Legal Standard .......................................................................................................................5

V.   Argument ................................................................................................................................5

     A.   Dr. Sullivan's Damages Analysis Fails to Apportion, is Economically
          Unsound, and Should be Excluded ..............................................................................5
          1.   Dr. Sullivan's Benchmark Product Analysis Fails to Apportion to
               the Value of the Specific Implementation of the Patented ETA
               Feature ................................................................................................................6
          2.   Dr. Sullivan's Benchmark Product Analysis Fails to Apportion Out
               the Value of Non-Patented Features ...................................................................7
          3.   Dr. Sullivan's Churn Analysis is not Economically Sound and does
               not Rely on the Facts in this Case .......................................................................8

     B.   Dr. Sullivan's Alternative Theory Should be Excluded ............................................10
          1.   Dr. Sullivan's Alternative Theory is a Direct Violation of the
               Federal Circuit's *Uniloc* Ruling .......................................................................10
          2.   Dr. Sullivan's Alternative Theory is Unreliable and Irrelevant .......................11

VI.  Conclusion ...........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...........................................................................................................5

*ePlus, Inc. v. Lawson Software, Inc.*,
764 F. Supp. 2d 807 (E.D. Va. 2011), aff'd, 700 F.3d 509 (Fed. Cir. 2012) ...............5

*Fractus, S.A. v. Samsung*,
2011 U.S. Dist. LEXIS 154697 (E.D. Tex. 2011) ......................................................7

*GE Co. v. Joiner*,
522 U.S. 136 (1997)...........................................................................................................9

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).................................................................................8, 11

*ResQNet.com, Inc. v. Lansa*,
594 F.3d 860 (Fed. Cir. 2010).................................................................................5, 6, 7

*Riles v. Shell Exploration & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002)....................................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)..................................................................................10

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010)..................................................................................12

**OTHER AUTHORITIES**

Fed. R. Evid. 702(b).............................................................................................................5, 8

Defendants AT&T Mobility LLC ("AT&T"), Cellco Partnership ("Verizon"), Networks In Motion, Inc. ("NIM"), TeleCommunication Systems, Inc. ("TCS"), and Telenav, Inc. ("Telenav") move to exclude the testimony of Vehicle IP's ("VIP's") damages expert, Dr. Ryan Sullivan.[1]

## I.   SUMMARY OF THE ARGUMENT

Dr. Sullivan presents a reasonable royalty damages analysis based on a running royalty rate for each estimated month of subscription services purchased for the accused products.[2] Dr. Sullivan presents VIP's inflated damages figures through a series of analyses related to benchmark products that violate established damages law.

VIP accuses Defendants of infringing the claims of the asserted '377 patent for their mobile navigation applications that, inter alia, allegedly calculate an expected time of arrival (or ETA) to an end user's chosen destination in a specific manner—namely calculating ETA on the user's handset. The claims of the '377 patent are limited to that specific implementation.

As the proponent of Dr. Sullivan's testimony, VIP bears the burden of establishing the admissibility of his testimony, but it cannot satisfy this burden. First, despite conceding that VIP's invention only covers a specific way of determining ETA, Dr. Sullivan fails to apportion down to the value of that specific implementation of ETA taught by the asserted patent. Instead, Dr. Sullivan's damages opinions capture the value of ETA generally in mobile applications by basing his opinions on "benchmark products" that provide ETA, even though he admits that the

---

[1] Dr. Sullivan's excerpted report is attached to the Declaration of David Clonts as Ex. A (Sullivan Rep.).

[2] Dr. Sullivan determines his claimed royalty rates separately for the two defendant groups (Telenav/AT&T and TCS/Verizon) by calculating a ▉ per subscriber-month using a benchmark product analysis he calls "revenue apportionment" and then performs additional so called "profit apportionment" and "licensor apportionment." *See, e.g.*, Clonts Decl., Ex. A ¶¶ 155-61. Dr. Sullivan's "revenue apportionment" analysis is the basis of his entire damages opinion, and if excluded, the remainder of his opinion and testimony, including the profit apportionment and licensor apportionment, should be excluded as well.

1


provided ETA may be "determined differently than in the '377 patent," i.e. the ETA is calculated at the remote server instead of by the user's handset. Clonts Decl. Ex. A ¶ 126. Dr. Sullivan makes no attempt to apportion the value of claimed functionality (the specific location of the ETA calculation), which pales in comparison to the overall value of ETA generally. Second, Dr. Sullivan makes no attempt to exclude, or apportion out, the value of other non-patented features in the benchmark products. Third, Dr. Sullivan's use of a chosen "churn" rate to convert the one-time, single payment fee for the benchmark products to an equivalent monthly recurring charge is factually unsupported and legally impermissible.

Compounding these errors, Dr. Sullivan presents an alternative opinion to justify the reasonableness of his damages analyses by checking his final damage amounts against a ▓ royalty rate of the entire revenue base of the accused products. This alternative opinion, which allegedly arrives at similar estimates with his benchmark analysis, directly conflicts with *Uniloc*. Moreover, Dr. Sullivan improperly used the ▓ royalty rate derived from ▓▓▓ lump-sum natured licenses to support his running royalty analysis. Therefore, both of Dr. Sullivan's primary and alternative analyses should be excluded.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

VIP accuses the Defendants of infringing the claims of the '377 patent based on their alleged design, sales, and use of their respective mobile navigation cell phone applications ("apps"). The parties have completed fact and expert discovery. VIP has retained Dr. Sullivan as it damages expert, and Dr. Sullivan has submitted an opening and reply damages expert report. Dr. Sullivan was also deposed twice, once by each of the two defendant groups.

## III.    FACTUAL BACKGROUND

VIP accuses Defendants of infringing the claims of U.S. Pat. No. 5,987,377 (the "'377 patent"), which generally require (1) a dispatch to manage and monitor vehicles, including the

transmission of destination information to a mobile unit over a cellular network, and (2) a mobile unit that uses the destination information to calculate an expected time of arrival (ETA). Specifically, the claims of the '377 patent are limited to ETA being calculated by the mobile unit. ETA calculated remotely and sent to the mobile unit would not meet the claims. Dr. Sullivan's damages analysis focuses on the ETA feature of the accused products.

The accused products include: the AtlasBook Navigator platform (offered in "white labeled" versions including VZ Navigator); TCS Navigator (offered in "white-labeled" versions); and Telenav GPS Navigator (offered in "white labeled" versions such as AT&T Navigator, Sprint Navigation, and Your Navigator Deluxe on the U.S. Cellular network). Each of these products provide, among many other features and functions, turn-by-turn directions to an end user's chosen destination. In addition to the ETA feature—allegedly covered by the '377 patent—these accused products include multiple features such as navigation instructions, audible turn-by-turn directions, automatic rerouting, multiple route options, 3D maps, traffic display, and voice input.

Dr. Sullivan calculates claimed damages through a three step process: "revenue apportionment," followed by the steps of "profit apportionment," and "licensor apportionment," which are both purported to lower the royalty rate that results from Dr. Sullivan's revenue apportionment analysis. In the revenue apportionment step, to determine the consumer value of the claimed ETA feature, Dr. Sullivan begins by identifying supposed "benchmark products" that allegedly provide ETA as a primary benefit. But Dr. Sullivan admits that his chosen benchmark products implement ETA differently than what is required by the '377 patent—*i.e.*, in the benchmark products, ETA can be calculated at a remote server and sent to the mobile unit, instead of ETA being calculated by the mobile unit itself:

[redacted]



Clonts Decl. Ex. A ¶ 126 (parenthetical included in original) (emphasis added). In his report, Dr. Sullivan identifies a number of "transit tracking mobile applications, which provide the ETA of the next bus or train to arrive at the nearest stop to the user's location." Clonts Decl. Ex. A ¶ 129. These benchmark products had different pricing,[3] but Dr. Sullivan chose a $0.99 one-time fee as allegedly representative of the value of the accused ETA functionality.

Next, Dr. Sullivan converts the $0.99 one-time pricing into an "equivalent monthly recurring charge" or "equivalent MRC" to calculate a royalty rate that is in the same payment structure as the monthly subscription fee that is charged for some of the accused products. *See* Clonts Decl. Ex. A ¶ 150. To determine the appropriate length of use, Dr. Sullivan utilizes an estimated monthly subscriber churn rate for the accused products. A monthly churn rate is the percentage rate at which subscribers to a product drop their subscription in a given month.

Dr. Sullivan uses a churn rate of ▮ for all of the Defendants' accused products. Clonts Decl. Ex. A ¶ 151. For this churn rate, of the 100% of subscribers at the beginning of the month, after ▮ churn, only ▮ of those subscribers are left at the end of the month. Using a weighted average of the number of remaining un-churned subscribers and the respective monthly equivalent MRC, Dr. Sullivan calculated an equivalent MRC of ▮ per month for all customers. Clonts Decl. Ex. A ¶¶ 153-54.

Dr. Sullivan chose the ▮ churn rate because it was ▮ Clonts Decl. Ex. A ¶ 151. Even though this

---

[3]For example, the benchmark products include numerous transit-tracking applications that were available for free to consumers. *See, e.g.*, Clonts Decl. Ex. A ¶¶ 146-48. Dr. Sullivan also fails to consider that some of the accused products themselves, such as Telenav Scout, offer free navigation services with ETA functionality. *Id.* ¶ 25.

churn rate was only an estimated number and only related to AT&T Navigator, Dr. Sullivan applied this churn rate in his damages analysis for all of the accused products as identified above. Dr. Sullivan does not cite to any documents or evidence for the actual churn rate AT&T experienced for the subscribers of the AT&T Navigator product over the life of the product. Dr. Sullivan also does not cite to any documents or evidence to identify the actual churn rate for any of the other accused products.

## IV. LEGAL STANDARD

Federal Rules of Evidence 702 permits the testimony of experts if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is a product of ***reliable principles and methods***, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under *Daubert*, a trial judge has the obligation to ensure that expert evidence is relevant and reliable before it is tendered to a jury. *ePlus, Inc. v. Lawson Software, Inc.,* 764 F. Supp. 2d 807, 812 (E.D. Va. 2011), aff'd, 700 F.3d 509 (Fed. Cir. 2012). "An additional consideration under Rule 702 - and another aspect of relevancy - is whether expert testimony proffered in the case is ***sufficiently tied to the facts of the case*** that it will aid the jury in resolving a factual dispute.'" *Id.*; *Daubert*, 509 U.S. at 591 (emphasis added). A damages analysis which fails to "tie proof of damages to the claimed invention's footprint in the market place" should be excluded as unreliable. *See ResQNet.com, Inc. v. Lansa*, 594 F.3d 860, 869 (Fed. Cir. 2010).

## V. ARGUMENT

### A. Dr. Sullivan's Damages Analysis Fails to Apportion, is Economically Unsound, and Should be Excluded

In order to purportedly apportion the value of the ETA functionality in the accused products, Sullivan utilizes the value of benchmark products that provided ETA calculations.

5

According to Sullivan, "[t]hose benchmarks, which are transit tracking applications, are supplying estimated time of arrival. . . ." Clonts Decl. Ex. B, Sullivan Depo at 157.

### 1. Dr. Sullivan's Benchmark Product Analysis Fails to Apportion to the Value of the Specific Implementation of the Patented ETA Feature

The first flaw in Dr. Sullivan's benchmark product analysis is that, as he admits, his apportionment is not limited to the value of the claimed ETA functionality—namely, ETA calculated by a mobile unit. His benchmark analysis captures the general idea of calculating ETA, something that Dr. Sullivan conceded that the '377 patent did not invent, thus failing to "tie proof of damages to the claimed invention's footprint in the market place" as required by the law. *See ResQNet.com,* 594 F.3d at 869. Dr. Sullivan admits that the claims of the '377 patent do not cover ETA "in and of itself," but instead cover a specific implementation. Clonts Decl. Ex. B at 156:1-13. Nevertheless, Dr. Sullivan's benchmark product analysis is not limited to the specific implementation claimed by the '377 patent, and he does nothing to apportion for that problem. *See* Clonts Decl. Ex. A ¶ 126 (ETA may be "determined differently than in the '377 patent"). As Telenav's technical expert stated, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Clonts Decl. Ex. C, Andrews Rep. ¶¶ 322-323; *see also* Day Decl. Ex. M, Franz Rebuttal NI ¶¶ 225-28. VIP has offered no evidence otherwise to prove that the benchmark products calculate ETA at the mobile unit, or in the same manner as done in the accused products. *See*, *e.g*., Day Decl. Ex. M ¶¶ 63-67. Therefore, Dr. Sullivan's benchmark product analysis improperly captures the value of the generally calculating ETA.

In a proper analysis, the incremental value of calculating ETA at a particular place (*e.g.* at the mobile unit) would only be worth a fraction of the value of the basic idea of calculating ETA.

6

Dr. Sullivan admitted that the '377 patent only ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Clonts Decl. Ex. A ¶ 55. However, Dr. Sullivan does not attempt to quantify these incremental benefits. Consequently, Dr. Sullivan's benchmark analysis fails to have a nexus to these claimed incremental benefits afforded by the '377 patent.

Additionally, Dr. Sullivan's benchmark analysis actually captures the value of the non-infringing alternative, which is to calculate ETA at the servers and transmit the ETA information to the mobile unit. Clonts Decl. Ex. D, Bakewell (Telenav's Damages Expert) Report ¶¶ 204-215; Day Decl. Ex. N, Ugone (TCS's Damages Expert) Rep. ¶ 112. VIP admits that the '377 patent does not cover ETA that is calculated by a remote server/dispatch and sent to the mobile unit. Clonts Decl. Ex. E, Westerlage Depo. at 264:24-265:9. But by using benchmark products that calculate ETA in precisely this manner, Dr. Sullivan's benchmark analysis nevertheless improperly captures this value.

Allowing the jury to hear such evidence not tied to the claimed invention risks "compensation for infringement [that] punishes beyond the reach of the statute." *ResQNet.com*, 594 F.3d at 869; *see also Fractus, S.A. v. Samsung*, 2011 U.S. Dist. LEXIS 154697 (E.D. Tex. 2011) (excluding survey expert testimony of Dr. Peterson—also VIP's survey expert in this case—regarding the value of internal cell phone antennas versus external cell phone antennas generally, because his survey was not tied to the footprint of the patented technology, which only included a specific implementation of internal cell phone antennas).

### 2. Dr. Sullivan's Benchmark Product Analysis Fails to Apportion Out the Value of Non-Patented Features

The second flaw in Dr. Sullivan's benchmark product analysis is that he makes no attempt to apportion out the value of non-ETA features and functions from the benchmark

7

products. Instead, Dr. Sullivan attributes the entire value of the benchmark products to the general notion of calculating ETA, despite the fact that these products contain numerous other features that have significant value. By Dr. Sullivan's own admissions, the benchmark products do more than just calculate ETA because they actually track public transit vehicles.[4] For instance, the Routesy app relied upon by Dr. Sullivan as a benchmark product tracks and provides location information for all of the buses, and trains for the San Francisco Muni bus and BART train systems. *See* Clonts Decl. Ex. A ¶¶ 136-139. Dr. Sullivan's analysis does nothing to account for the substantial value associated with these and other features and fails to apportion the ▮▮▮▮ value down to a lower royalty rate specifically attributable to a general method of determining ETA (much less apportioning to the patented ETA functionality). *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (the court's objective is "determining the correct (or at least approximately correct) value of the *patented invention*, when it is but one feature among many").

### 3. Dr. Sullivan's Churn Analysis is not Economically Sound and does not Rely on the Facts in this Case

Dr. Sullivan's use of an ▮▮ churn rate to calculate the ▮▮ equivalent MRC attributable to ETA for all of the accused products is not factually supported, and Dr. Sullivan's opinions and testimony utilizing this churn rate should be excluded. A damages theory must be based on "sound economic and factual predicates," (*Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)), and "on sufficient facts or data." Fed. R. Evid. 702(b).

The ▮▮ churn rate is found in a single document produced by AT&T, which contains a

---

[4] Dr. Sullivan describes multiple other valuable functionalities of the benchmark products,: 1) finding the nearest stop to the user's location; 2) determining which buses or trains will arrive at that stop; and 3) determining the location of those buses or trains in order to calculate their ETA. Clonts Decl. Ex. A ¶ 129

8

projected churn rate for the AT&T Navigator almost a year before the product launched. *See* Clonts Decl. Ex. A ¶¶ 136-139. Despite the fact that this projected churn rate relates only to the AT&T Navigator product, Dr. Sullivan applies this same churn rate in his analysis to all of the accused products provided by TCS, Verizon, and Telenav (e.g., Telenav products that operate on other carrier networks such as Sprint and T-Mobile). Clonts Decl. Ex. A ¶ 151. Further, Dr. Sullivan admits that even for AT&T, the ▮▮▮▮ churn rate was just a projection, and not an actual measured value that he validated. *See* Clonts Decl. Ex. B at 167:8-13, 168:2-10 (instead stating the ▮▮▮▮ churn rate "is consistent with my understanding and my recollection of other documents that I have seen as well.") Thus, Dr. Sullivan has not offered any valid evidence to justify the use of an ▮▮▮▮ churn rate for any of the Defendant's accused products.

Importantly, Dr. Sullivan has failed to demonstrate that a projected churn rate for AT&T Navigator can be applicable to VZ Navigator, a different product from a different company. It is undisputed that Dr. Sullivan has access to actual churn rate data for VZ Navigator, and thus his choice to use of AT&T's projection instead is not factually supported. Dr. Sullivan's "understanding" of unspecified documents and unfounded statements regarding the applicability of this churn rate do not result in proper damages opinions. Damages opinions must be adequately connected to existing data and connections to data cannot be justified by the mere "*ipse dixit*" of the expert. *Kumho Tire*, 526 U.S. at 157; *GE Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, if a different churn rate were used, the royalty rate he calculated would be different, as admitted by Dr. Sullivan. Clonts Decl. Ex. B at 173:18-20. Thus, Dr. Sullivan's opinions and testimony regarding the ▮▮▮▮ churn rate should be excluded.

9

B.  **Dr. Sullivan's Alternative Theory Should be Excluded**

1.  **Dr. Sullivan's Alternative Theory is a Direct Violation of the Federal Circuit's *Uniloc* Ruling**

In calculating his alternative royalty rate described as the ▇▇▇ approach," Dr. Sullivan uses ***all*** revenues derived from Defendants' sales of the accused products, and then applies a ▇ royalty rate against those revenues. Clonts Decl. Ex. A ¶ 176, Table 4, Attach. F-5. Dr. Sullivan uses this alternative theory as a comparison for his primary analysis to show that under the purported ▇ royalty rate in the ▇▇▇▇▇▇▇, he "independently arrive[s] at similar and mutually consistent estimates." Clonts Decl. Ex. A ¶ 176.

Dr. Sullivan's approach of "checking" the royalty rate by applying the entire market value rule was specifically rejected by the Federal Circuit. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-21 (Fed. Cir. 2011). Here, like in *Uniloc*, Dr. Sullivan would improperly introduce to the jury Defendants' overall revenue figures, which stretch into the ▇▇▇▇▇▇ when combined together, without being able to show that this ▇▇▇ number was actually driven by the patent in suit. This is precisely the problem addressed by the Federal Circuit in *Uniloc*. As the *Uniloc* district court aptly noted, "[t]he $19 billion cat was never put back into the bag even by Microsoft's cross-examination of Mr. Gemini and re-direct of Mr. Napper, and in spite of a final instruction that the jury may not award damages based on Microsoft's entire revenue from all the accused products in the case." *Uniloc*, 632 F.3d at 1320.

Further, Dr. Sullivan notes that the accused products include a number of non-patented features such as "moving maps," "automatic rerouting," "incident alerts, lane assist, speed traps and traffic camera warnings," "POI database and WiFi spots," "gas prices, movie times, restaurants, etc.," and "local search." Clonts Decl. Ex. A ¶¶ 124-125. Yet, in his alternative analysis, Dr. Sullivan fails to apportion his royalty base to include only those revenues related to

the allegedly infringing ETA feature or to otherwise demonstrate, as he is required to, that the allegedly infringing ETA features were the basis for consumer demand for the accused products.

### 2. Dr. Sullivan's Alternative Theory is Unreliable and Irrelevant

In the "█████" approach, Dr. Sullivan improperly relies on █████ with lump-sum payments to arrive at a █ royalty rate in his report.[5] These two █████ settlements are not comparable to the facts of this case, and they cannot be used to support a damages award of █████.[6] Specifically, Dr. Sullivan relies on self-serving language in the █ license indicating that the lump-sum payment[7] was calculated based on past and estimated future revenues and an estimated royalty rate of █, (Clonts Decl. Ex. F, excerpt of █ License at p. 3), and calculates this value on his own for the █ license, which is silent on royalty rate. See Clonts Decl. Ex. G, excerpt of █ License at p. 2-3. Dr. Sullivan's conversion of lump-sum licenses in support of his running royalty opinion is improper because he has failed to provide any comparison basis for this conversion.[8] *Lucent Techs., Inc. v. Gateway, Inc., Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009) ("Fundamental differences exist between lump-sum agreements and running-royalty agreements"; and thus

---

[5] Defendants █████ entered into license agreements with Vehicle IP in 2011 and 2012 for █████ respectively, and were subsequently dismissed from this litigation. See Clonts Decl. Ex. F; Clonts Decl. Ex. G.

[6] Specifically, his royalty calculation selected only the █████ licenses while ignoring 1) the █████ ("the APA") and 2) █████ ("the █ Covenant"). See Clonts Decl. Ex. H, excerpts of APA at Bates nos. 892, 905-10; Clonts Decl. Ex. I, █ Covenant at Bates nos. 395, 400. Dr. Sullivan did not provide any plausible economic analysis for ignoring those licenses.

[7] █████ submitted declarations stating that they did not view the licenses as running royalty agreements. See, e.g., Clonts Decl. Ex. J, 1/26/2016 Michael Butler Decl. at ¶ 8; Clonts Decl. Ex. K, 1/14/2016 David Ayres Decl. at ¶ 6.

[8] Dr. Sullivan failed to apply his conversion in a consistent manner, resulting in an overstated rate. He ignores the APA and █ agreement, both of which would have a far lower "royalty rate" applying the same methodology used by Dr. Sullivan in the █████ licenses.

11

"some basis for comparison must exist in the evidence presented to the jury."); *see also Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010).

Even Dr. Sullivan admits that Defendants would not have agreed to a ▓ royalty rate. As acknowledged by Dr. Sullivan, the ▓▓▓ agreements were entered into the context of litigation for ▓▓▓. Clonts Decl. Ex. A ¶¶ 112, 113, 117. The settlement amounts ▓▓▓) were significantly less than the cost of litigation,[9] which was the reason ▓▓▓ entered into the agreements with VIP.[10] *Id*. Dr. Sullivan concedes that Defendants would have negotiated a lower royalty rate: "given the larger subscriber base for the accused AT&T Navigator and VZ Navigator products compared to the licensed ▓▓▓ products, AT&T and Cellco may have been able to negotiate more favorable (i.e. lower) royalty than ▓▓▓." Clonts Decl. Ex. A ¶ 175.

Thus, Dr. Sullivan's alternative "▓▓▓ approach" is not based on reliable principles and should be excluded.

## VI. CONCLUSION

Dr. Sullivan's report is flawed in at least the important respects outlined above. Defendants hereby request the Court to exclude Dr. Sullivan's report and testimony related to: (1) benchmark product apportionment analysis, (2) alternative theory applying a ▓ royalty rate (extracted from the ▓▓▓ licenses) to the entire market value of the accused products.

---

[9] The average litigation costs in 2015 for patent infringement suits (defending against non-practicing entities through trial) were (i) $1.4 million if $1 million – $10 million was at risk, (ii) $2.8 million if $10 million – $25 million was at risk, and (iii) $4.5 million if over $25 million was at risk. See Clonts Decl. Ex. L, AIPLA 2015 Report of the Economic Survey.

[10] ▓▓▓ witnesses provided declarations explaining that these settlement amounts were agreed to simply to avoid far higher litigation costs and do not reflect any analysis of the value of the patents or the correctness of any express or implied royalty rate. Clonts Decl. Ex. J at ¶ 8; Clonts Decl. Ex. K at ¶¶ 5-7.

| | |
|---|---|
| OF COUNSEL:<br>David R. Clonts<br>Manoj S. Gandhi<br>Michael F. Reeder, II<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1111 Louisiana Street, 44th Floor<br>Houston, TX 77002<br>(713) 220-5800<br><br>Steven M. Zager<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1000 | */s/ Andrew E. Russell*<br>John W. Shaw (No. 3362)<br>Andrew E. Russell (No. 5382)<br>David M. Fry (No. 5486)<br>SHAW KELLER LLP<br>300 Delaware Avenue, Suite 1120<br>Wilmington, Delaware 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>arussell@shawkeller.com<br>dfry@shawkeller.com<br>*Attorney* for *Defendants AT&T Mobility LLC and TeleNav Inc.* |
| OF COUNSEL:<br>John P. Schnurer<br>Kevin J. Patariu<br>Evan S. Day<br>PERKINS COIE LLP<br>11988 El Camino Real, Suite 350<br>San Diego, CA 92130-2594<br>(858) 720-5700<br><br>Floyd B. Chapman<br>Kevin P. Anderson<br>Karin Hessler<br>WILEY REIN LLP<br>1776 K Street, NW<br>Washington, DC 20006<br>(202) 719-7000<br>*Cellco Partnership Only* | */s/ John G. Day*<br>John G. Day (No. 2403)<br>Tiffany Geyer Lydon (No. 3950)<br>Andrew C. Mayo (No. 5207)<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>jday@ashby-geddes.com<br>tlydon@ashby-geddes.com<br>amayo@ashby-geddes.com<br><br>*Attorneys for Defendants TeleCommunication Systems, Inc., Networks in Motion, Inc. and Cellco Partnership* |

Dated:  June 23, 2016

**CERTIFICATE OF SERVICE**

I, Andrew E. Russell, hereby certify that on June 23, 2016 this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**
AnnaMartina Tyreus Hufnal
Christopher A. Winter
cwinter@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801-1114
hufnal@fr.com
cwinter@fr.com


Michael J. Kane
Geoffrey D. Biegler
Jason M. Zucchi
William R. Woodford
Phillip W. Goter
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 335-5070
kane@fr.com
biegler@fr.com
zucchi@fr.com
woodford@fr.com
goter@fr.com

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkelle.com
arussell@shawkeller.com
*Attorney* for *Defendants AT&T Mobility LLC and TeleNav, Inc.*