IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEHICLE IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. 09-1007-LPS |
| AT&T MOBILITY LLC, CELLCO | : | |
| PARTNERSHIP, NETWORKS IN | : | |
| MOTION, INC., TELECOMMUNICATION | : | |
| SYSTEMS, INC., and TELENAV INC., | : | |
| | : | |
| Defendants. | : | |

Martina Tyreus Hufnal, FISH & RICHARDSON P.C., Wilmington, DE

Michael J. Kane, William R. Woodford, Jason M. Zucchi, and Phillip W. Goter, FISH & RICHARDSON P.C., Minneapolis, MN

Geoff D. Biegler, FISH & RICHARDSON P.C., San Diego, CA

     Attorneys for Plaintiff.


John G. Day, Tiffany Geyer Lydon, and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

John Schnurer and Evan S. Day, PERKINS COIE LLP, San Diego, CA

     Attorneys for Defendants.

---

## **MEMORANDUM OPINION**


September 29, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.     BACKGROUND

On December 31, 2009, Plaintiff Vehicle IP ("Plaintiff") filed suit against Defendants Telecommunication Systems, Inc., Networks in Motion, Inc., Cellco Partnerships, AT&T Mobility LLC, and Telenav, Inc. (collectively, "Defendants"), alleging infringement of U.S. Patent No. 5,987,377 (the "'377 patent"). (D.I. 1) The '377 patent, entitled "Method and Apparatus for Determining Expected Time of Arrival," was filed on March 2, 1998, and issued on November 19, 1999.

The '377 patent discloses methods and systems involving a dispatch for generating destination information for a vehicle; a communications link coupled to the dispatch; and a mobile unit coupled to the communications link for receiving the destination information generated by the dispatch, wherein the mobile unit can determine vehicle position and, based on that position, calculate the estimated time of arrival ("ETA") at a destination identified by the vehicle. *See* '377 pat. col. 1:52-65. Each of the asserted claims is a dependent claim that adds additional limitation to this basic system or is a method of using such a system. (*See* D.I. 312 at 7)

Defendants Telecommunication Systems, Inc., Networks in Motion, Inc., and Cellco Partnerships filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.I. 311) ("Defendants' Motion") By their motion, these Defendants seek to invalidate the asserted claims for being directed to patent-ineligible subject matter. Defendants AT&T Mobility LLC and Telenav, Inc. later joined the motion. (D.I. 317)

The Court heard oral argument on April 26, 2016. (*See* D.I. 350 ("Tr.")) Defendants

1

filed Notices of Subsequent Authority on June 2 and September 16.  (D.I. 363, 514)

For the reasons discussed below, the Court will deny Defendants' motion.

## II.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial."  When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).  This is the same standard that applies to a Rule 12(b)(6) motion to dismiss.  *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221.  "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."  *Venetec Int'l. Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Burlington Coat Factory*, 114 F.3d at 1420.  Thus, a court may grant a motion for judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-

pleaded allegations in the complaint as true, and viewing them in the light most favorable to

plaintiff, plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482 (3d Cir. 2000).

The Court may consider matters of public record as well as authentic documents upon

which the complaint is based if attached to the complaint or as an exhibit to the motion. *See*

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  The Court

may also take judicial notice of the factual record of a prior proceeding. *See Oneida Motor*

*Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).  Ultimately, a motion

for judgment on the pleadings can be granted "only if no relief could be afforded under any set of

facts that could be proved." *Turbe*, 938 F.2d at 428.

### B.      Patent-Eligible Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvement thereof,

may obtain a patent therefor, subject to the conditions and requirements of this title."  There are

three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical

phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  Pertinent

here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of

itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)

(internal quotation marks omitted).  "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the

Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original

cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive

right.'  Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In*

*re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself'" ("step 2"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 2016 WL 4073318, at *3 (Fed. Cir. Aug. 1, 2016).

### 1.     *Mayo* Step 1

At step 1, "the claims are considered in their entirety to ascertain whether their character **as a whole** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 2016 WL 5335501, at *3 (Fed. Cir. Sept. 23, 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").

Courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits in conducting a step-1 analysis. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 2016 WL 4896481, at *7 (Fed. Cir. Sept. 13, 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of

4

the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO*, 2016 WL 4896481, at *7.

### 2. *Mayo* Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 2016 WL 4896481, at *7 (internal brackets and quotation marks omitted). The "standard" step-2 inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step 2. *Id.* at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs*, 2016 WL 5335502, at *5 ("[N]either the

claim nor the specification reveals any concrete way of employing a customized user interface.").

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.*

### 3.     Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). The "concern that drives the exclusionary principle [i]s one of pre-emption." *Id.* That is, where a patent would preempt use of "basic tools of scientific and technological work," i.e., "[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For example, in *McRO*, in support of its conclusion that a claim was patent-eligible under step 1, the Federal Circuit held that limitations of the claim "prevent[ed] preemption of all processes for achieving automated lip-synchronization of 3-D characters." *McRO*, 2016 WL 4896481, at \*9. In *Bascom*, 2016 WL 3514158, at \*7, in support of the Court's conclusion that claims reciting "a specific, discrete implementation of the abstract idea of filtering content" were patent-eligible

under step 2, the Federal Circuit explained that the claims did not preempt "all ways of filtering content on the Internet."

## III.    DISCUSSION

### A.    The Asserted Claims

Defendants argue that all of the asserted claims are unpatentable because they claim an abstract ideas.  All of the asserted claims are dependent claims.

Each of the asserted claims is either an apparatus or a method claim.  Specifically, claims 4-6, 8, 9, 15, 17, 19, and 21 are apparatus claims.  Of these apparatus claims, claims 4-6, 8, and 9 depend from claim 1, while claims 15-17, 19, and 21 depend from claim 12.  The method claims – claims 25, 27, 28, 30, and 32 – all depend from claim 23.

Defendants argue that the apparatus and method claims are substantively the same and should "rise or fall" together.  (D.I. 312 at 11)  Plaintiff does not disagree.  Hence, although the parties have not expressly agreed that any one claim is "representative," neither the outcome nor the Court's analysis here is materially different for any of the claims.

The Court previously construed several of the claim terms in the asserted claims.  *See Vehicle IP, LLC v. AT&T Mobility LLC*, 2011 WL 6176205 (D. Del. Dec. 12, 2011).  Following claim construction, Defendants filed motions for summary judgment of noninfringement, which the Court granted.  (D.I. 241, 247)  Plaintiff then appealed the Court's claim constructions to the United States Court of Appeals for the Federal Circuit.  The Federal Circuit reversed this Court's construction of the terms "expected time of arrival" and "way point(s)," provided constructions for those terms, and vacated the final judgment of non-infringement.  *Vehicle IP, LLC v. AT&T Mobility, LLC*, 594 F. App'x 636, 642-644 (Fed. Cir. 2014).

7

In the present proceedings on remand, the Court is applying the following constructions:

| Claim Term | Construction |
| --- | --- |
| "expected time of arrival" | time of day at which the vehicle is expected to arrive somewhere |
| "dispatch" | a computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles |
| "way point(s)" | a geographical point of reference or destination along a route |
| "determine in response to vehicle position" | determine based on the vehicle position and update as the vehicle position changes throughout the trip |

*See id.*

## B.   Defendants Have Not Shown Patent Ineligibility at this Stage of the Case

Defendants argue that the asserted claims of the '377 patent are directed to the abstract

idea of "calculating, at a vehicle, its expected time of arrival at a location." (D.I. 312 at 11)

Defendants elaborate that the patent's claims are directed to the "basic idea of calculating the

expected time of arrival in the following manner: (1) generating destination information,

including a plurality of way points, remotely from the vehicle; (2) transmitting that destination

information to the vehicle; (3) determining, at the vehicle, the vehicle's own position; and

(4) determining, at the vehicle, the vehicle's expected time of arrival at the location." (*Id.* at 12)

Plaintiff counters that the disputed claims are not directed to an abstract idea. (D.I. 318 at

13)  In Plaintiff's view, the dispatch and mobile unit recited in each of the asserted claims of the

'377 patent are "specialized equipment." (D.I. 318 at 13)  Additionally, this specialized

equipment used in a "in a specific, narrowly-tailored, and unconventional way." (*Id.* at 13, 16)

Considering the claims as a whole, as it must (*see* D.I. 318 at 10, 12; *see also Alice*, 134

8

S. Ct. at 2361 n.3 ("Because the approach we made explicit in *Mayo* considers all claim elements, both individually and in combination . . . [the] patent claims must be considered as a whole.") (internal quotation marks omitted)), the Court agrees with Plaintiff.

While Defendants are correct that each of the claims is directed to a system or method of making a calculation, the details of the system or method steps dominate the claims. *See Enfish, LLC*, 822 F.3d at 1335-36 (finding that, in analyzing whether claim is "directed to" abstract idea under *Alice*, it is appropriate to consider "whether the focus of the claims is on the specific asserted improvement in [the technology at issue] . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool."). The asserted claims are not directed to an abstract idea but, rather, to a specific technological system designed to improve upon earlier technological solutions for calculating ETA. *See* '377 pat. col. 1:32:41 (describing how claimed system both improves accuracy and allows for dispatching and monitoring); *see also Enfish*, 822 F.3d at 1337 (finding that court's "conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional" systems).

The asserted claims do not merely recite a formula for estimated time of arrival and add the words "apply it." Instead, the claims recite the use of particular pieces of equipment and assign particular functions to each. *See generally Alice*, 134 S. Ct. at 1294; *Mayo*, 134 S. Ct. at 1299-1300; *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972). These features are then linked to create a system (or enable a methodology) that allows for the calculation of ETA. This "non-abstract" understanding of the claims is supported by the Federal Circuit's characterization of the very same claims when it considered Plaintiff's appeal. There the Federal Circuit described the

9

asserted claims in this case as being "directed to improving vehicle navigation systems through more efficient distribution of navigation functions between a remote dispatch and a mobile unit located at the vehicle." *Vehicle IP, LLC*, 594 Fed. App'x at 638.

The claims reflect deliberate choices about which equipment plays which part in the overall system. For example, the dispatch transmits the travel speed and waypoints, rather than allowing the mobile unit to calculate them at the vehicle. `377 pat. col. 14:62-15:13. The overall arrangement improves upon shortcomings of existing methods of calculating ETA by proposing an improvement in the process for doing so. *Cf. In re TLI Commc'ns LLC Patent Litig.*, 2016 WL 2865693, at *4 (Fed. Cir. May 17, 2016) (finding that claims recited abstract idea despite presence of tangible components because they did not describe "new physical combination" of components). "In other words, [the Court is] not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation." *Enfish*, 822 F.3d at 1339.

The Court's conclusion is further bolstered by the fact that each of the claims appears to involve the use of specialized equipment. Each claim requires the use of a "dispatch" – a specialized "computer-based communication and processing system remotely located from the vehicle that *manages and monitors vehicles*" (emphasis added) – to generate destination information and send that information to the vehicle. As this Court noted in its earlier claim construction order, the dispatch "should be understood as a computer system that has vehicle management and monitoring functions, and *not just any computer-based system remotely located from the vehicle*." *Vehicle IP, LLC v. AT& Mobility LLC*, 2011 WL 6176205, at *7 (D. Del. Dec. 12, 2011), *rev'd and remanded on other grounds*, 594 F. App'x 636 (Fed. Cir. 2014)

10

(emphasis added). Further, each claim requires the use of a mobile unit capable of "determining in response to vehicle position" the estimated time of arrival of the vehicle – a limitation that, as the parties' stipulated claim construction indicates, requires the unit to be capable of determining its own position. *Id.* at *3 n.2.

Several of the asserted claims add limitations that further specify the nature of the equipment at issue.[1]  Claims 4, 15, and 27 require the "dispatch" to be capable of transmitting an expected travel speed, as well as way points sufficient to specify a "predetermined route." Claims 5, 16, and 28 require the dispatch to send traffic or weather information, and require the mobile unit to be capable of calculating its estimated time of arrival based on these variables. Claims 6, 17, and 25 specify that the positioning function of the mobile unit is performed by a GPS receiver.  Claims 8, 19, and 30 specify that, upon recognizing that it has reached one way point, the claimed mobile unit must select a next way point and be capable of audibly communicating information regarding that way point.  Claims 9, 21, and 32 require the mobile unit to display the way points on a map.  Each of these limitations requires particular technical functionality, supporting the conclusion that the claims are not merely directed toward the application of an abstract idea in a ***generic*** computer environment.

Defendants' contention that limitations such as those just discussed require only

---

[1]These additional limitations are at least part of what distinguishes the asserted claims from those involved in cases cited by Defendants.  *See, e.g., MacroPoint, LLC v. FourKites, Inc.,* 2015 WL 6870118, at *1-7 (N.D. Ohio Nov. 6, 2015 ) (finding ineligible patent claims listing functions for tracking freight without specifying which hardware components perform which function, and without citing technical limitations above and beyond those possessed by general purpose computer); *Wireless Media Innovations, LLC v. Maher Terminals, LLC,* 100 F. Supp. 3d 405, 408, 415-16 (D.N.J. 2015), *aff'd,* 2016 WL 463218 (Fed. Cir. Feb. 8, 2016) (finding ineligible claims that listed method steps as part of computerized system, imposing no limitations that would prevent claims from being carried out by general-purpose computer).

"conventional" use of "generic" technology (Tr. at 24) raises factual issues that the Court cannot resolve on the record before it.  The Court is addressing a motion for judgment on the pleadings. The limited record that may properly be considered at this stage does not make clear whether the hardware limitations recited in the asserted claims reflect the capabilities of a generic computer as of the 1995 priority date of the `377 patent.  *See generally CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701-RGA, slip op. at *1 (D. Del. Sept. 15, 2016) *(citing TLI Commc'ns*, 823 F.3d at 611 (finding, at judgment on pleadings stage, patents were directed to abstract idea because ***specification*** makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea") (emphasis added) (internal citations and quotation marks omitted).

Thus, Defendants have failed to show that the asserted claims are directed to an abstract idea.  The Court is unable to conclude that the asserted claims are patent-ineligible.

Given that Defendants have failed at step 1, it is unnecessary for the Court to consider whether Defendants have also failed at step 2.

## IV.  CONCLUSION

Accordingly, the Court will deny Defendants' motion for judgment on the pleadings.  An appropriate Order follows.