# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEHICLE IP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC., and TELECOMMUNICATION SYSTEMS, INC., <br><br> Defendants. | C.A. No. 09-1007-LPS |

Martina Tyreus Hufnal, FISH & RICHARDSON P.C., Wilmington, DE

Michael J. Kane, William R. Woodford, Jason M. Zucchi, and Phillip W. Goter, FISH & RICHARDSON P.C., Minneapolis, MN

Juanita Brooks, Geoff D. Biegler, FISH & RICHARDSON P.C., San Diego, CA

    Attorneys for Plaintiff.


John G. Day, Tiffany Geyer Lydon, and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

John P. Schnurer, Kevin J. Patariu, and Evan S. Day, PERKINS COIE LLP, San Diego, CA

Floyd B. Chapman, Kevin P. Anderson, and Karin Hessler, WILEY REIN LLP, Washington, DC

    Attorneys for Defendants.

## MEMORANDUM OPINION

May 30, 2017
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

Vehicle IP, LLC filed suit against Defendants Telecommunication Systems, Inc., Networks in Motion, Inc., and Cellco Partnership (collectively, "TCS"), alleging infringement of U.S. Patent No. 5,987,377, which claims systems and methods for determining an expected time of arrival of a vehicle equipped with a mobile unit using a dispatch remotely located from the vehicle.

Presently before the Court is the issue of claim construction. The Court previously construed a number of claim terms in this case. (*See* D.I. 167) The parties subsequently filed cross-motions for summary judgment regarding, among other issues, infringement. (*See* D.I. 375, 378) The Court denied those motions, finding there to be a genuine dispute of material fact created by the parties' expert opinions, which both reasonably applied the Court's construction of the term "dispatch." (*See* D.I. 538 at 11) The Court also noted that further construction of "dispatch" may be appropriate. (*See id.* at 12 n.1) Thereafter, TCS sought leave to pursue further construction of the term (*see* D.I. 545), which the Court granted.[1] The parties submitted supplemental claim construction briefs. (*See* D.I. 552, 553, 556, 557). The Court held a claim construction hearing on April 28, 2017. (*See* D.I. 561 ("Tr."))

---

[1]A district court may engage in "rolling" claim construction, updating its constructions as the record develops. *See, e.g., Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."); *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("*Markman* does not obligate the trial judge to conclusively interpret claims at an early stage in a case. A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art.").

1

## I. LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

2

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the

3

invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

4

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## II. CONSTRUCTION OF DISPUTED TERM

### A. "dispatch"[2]

| |
|---|
| **Vehicle IP**<br>"computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles," wherein "manages vehicles" means "generates and provides information that facilitates or directs the vehicle's movement along the travel route" and "monitors vehicles" means "receives and processes information relating to the vehicle's status or position along the travel route" |
| **TCS**<br>"a computer-based communication and processing system remotely located from the vehicle that supervises and controls vehicles to a destination specified by the computer-based system" |
| **Court**<br>"a computer-based communication and processing system remotely located from the vehicle that supervises and controls vehicles to a destination specified exclusively by the computer-based system" |

The Court previously construed "dispatch" to be a "computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles." (D.I. 167 at 11) The parties' dispute centers on the meaning of "manages and monitors" in the Court's construction. Vehicle IP argues that the claimed dispatch manages vehicles by supplying information, but not necessarily the destination, to facilitate the vehicle's movement along a

---

[2]This term appears in all claims of the '377 patent.

travel route, and that the dispatch monitors vehicles by receiving and processing information about the vehicle's status or position along the route. (*See* D.I. 552 at 3-5) TCS contends that the "dispatch's management and monitoring functions work ***together*** to control vehicles – by assigning them destinations, by collecting surveillance data about the vehicles and their journeys, and then by using that data to update their destinations and routes as circumstances change." (D.I. 553 at 1)

As there is no evidence that "dispatch" has a plain or established meaning in the relevant art, the Court will not construe it more broadly than the specification's disclosure. *See Indacon, Inc. v. Facebook*, Inc., 824 F.3d 1352, 1357 (Fed. Cir. 2016). The Court previously determined that the dispatch is "not just any computer-based system remotely located from the vehicle." (D.I. 167 at 12) Rather, the specification makes clear that the dispatch performs particular functions. (*See id.* at 11-13)

TCS's proposed construction is consistent with those functions. The dispatch generates destination information and communicates it to the mobile unit. *See, e.g.*, '377 patent col. 4 ll. 58-59. The specification teaches that the dispatch selects the vehicle's destination. *See, e.g.*, col. 1 ll. 55-57; col. 2 ll. 16-19; col. 2 l. 66 - col. 3 l. 12; col. 5 ll. 53-56. Further, the dispatch receives information from the mobile unit and "processes this information to determine expected time of arrival, locate, track, dispatch, and communicate with [the] mobile unit." Col. 13. ll 3-6. Based on the information received, the dispatch can reroute and reschedule vehicles as necessary, based on, for example, traffic delays, changed destinations, or updated appointment times. *See* col. 6 ll. 51-60.

Vehicle IP contends that TCS's proposed construction cannot be correct because it would

exclude embodiments described in the specification in which the vehicle operator, not the dispatch, selects the destination. In particular, Vehicle IP identifies a passage that begins: "System 10 supports the remote sending of destination information to vehicle 40 from dispatch 20. If destination information is only input into mobile unit 42 just prior to departure of vehicle 40 from its origin, mobile unit 42 only has available destination information that is current as of the moment of departure." Col. 6 ll. 40-67. But this passage does not indicate that the vehicle operator selects the destination. Rather, this passage is about the dispatch sending destination information to the mobile unit. It describes a problem – the mobile unit not having current information – and provides a solution to that problem – the dispatch provides destination information to the mobile unit before departure and updates that information during a trip to prevent the information from becoming stale. Thus, "at the moment of departure, destination information input into mobile unit 42" – by the dispatch – "may include the preferred route for vehicle 40 and several destinations with corresponding appointment times," and during the trip "event[s] may compel dispatch 20 to send updated destination information." Col. 6 ll. 51-60. Other passages cited by Vehicle IP, considered in context, similarly do not suggest that the vehicle operator selects the destination. *See, e.g.*, col. 11 l. 57 - col. 12 l. 5; col. 12 ll. 6-13. Instead, the patent indicates that "[t]he dispatch generates destination information for the vehicle, specifying at least one destination." Col. 1 ll. 55-57.

The Court finds that the plain and ordinary meaning of the term "dispatch" in the context of the '377 patent requires the destination to be provided by the dispatch, and only the dispatch. Accordingly, the Court will adopt TCS's proposed construction of "dispatch," as modified to make this point explicitly clear.

7

## III. CONCLUSION

The Court construes the disputed term as explained above. An appropriate Order follows.